## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASSOCIATION OF AMERICAN RAILROADS; AMERICAN SHORT LINE AND REGIONAL RAILROAD ASSOCIATION; and NATIONAL WASTE & RECYCLING ASSOCIATION – NEW YORK STATE CHAPTER,<br><br>    Plaintiffs,<br><br>v.<br><br>BASIL SEGGOS,<br>    *Commissioner of the New York Department of Environmental Conservation*; and<br>LETITIA JAMES,<br>    *Attorney General of New York*,<br>in their official capacities,<br><br>    Defendants. | Case No. 24-cv-00135<br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs Association of American Railroads, American Short Line and Regional Railroad Association, and National Waste & Recycling Association – New York State Chapter allege:

### PRELIMINARY STATEMENT

1.      Congress has exercised broad regulatory authority over rail transportation for well over a century.  In order to achieve national uniformity in rail regulation—and prevent a patchwork of varying state-by-state enactments—Congress has expressly preempted state legislation that would manage, govern, burden, interfere with, or discriminate against rail transportation.

2.      In violation of this federal statutory scheme, New York State has enacted legislation—the "Waste By Rail Law"—requiring that railroads and their waste shipper customers cover solid waste with specific types of coverings when transported within the State.  *See* N.Y. Env't Conserv. Law § 27-0712(2) (effective Dec. 28, 2023) (the "Waste By Rail Law" or "the

Law") (new language added by amendment underlined) ("A municipality or any individual, firm or corporation acting on its behalf or any other individual, firm or corporation shall not cause or permit any solid waste to be transported on any vehicle, barge, ship, or scow unless the solid waste on the vehicle, barge, ship, or scow is covered <u>provided, however, that putrescible waste transported by rail shall be covered with sealing hard lids in a manner not inconsistent with Federal Railroad Administration regulations, and non-putrescible waste shipped by rail shall be covered with hard tarping securely fastened over the load, which shall not exceed the height of the side of the rail container, in a manner not inconsistent with Federal Railroad Administration regulations.</u>").

3.      The requirements imposed by the Waste By Rail Law are not mandated by federal law and they are not necessary for public health or safety.  But they would burden railroads and waste shippers with an onerous and costly regulatory requirement that would substantially interfere with the free flow of interstate commerce by rail.

4.      Federal law prohibits enforcement of the Waste By Rail Law.  The ICC Termination Act (ICCTA) grants "exclusive" authority to the federal Surface Transportation Board (STB) to regulate matters falling within ICCTA's broad scope, and preempts state laws that manage, govern, burden, interfere with, or discriminate against rail transportation.  *See* 49 U.S.C. § 10501(b) ("[t]he jurisdiction of the [STB] over . . . transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers … is exclusive" and "preempt the remedies provided under Federal or State law").  Because the Waste By Rail Law manages, governs, burdens, interferes with, and discriminates against rail transportation, it is preempted by ICCTA.

5.     Plaintiffs seek a declaration that the Waste By Rail Law is preempted by ICCTA and an injunction preventing Defendants from enforcing the Law.

**PARTIES**

6.     Plaintiff Association of American Railroads (AAR) is a nonprofit trade association whose members include all of the Class I freight railroads (North America's largest freight railroads), smaller freight railroads, and passenger and commuter railroads.  AAR's members operate approximately 83 percent of the line-haul mileage, employ 95 percent of the workers, and account for 97 percent of the freight revenues of all railroads in the United States.  AAR and its members are committed to operating the safest, most efficient, cost-effective, and environmentally sound freight rail transportation system in the world.  AAR represents its member railroads in proceedings before Congress, administrative agencies, and the courts in matters of common interest, such as the issues in this lawsuit.  AAR members, including CSX Transportation (CSX) and Norfolk Southern Railway (Norfolk Southern), operate in New York State.

7.     Plaintiff American Short Line and Regional Railroad Association (ASLRRA) is a nonprofit trade association whose members include approximately 500 Class II and Class III ("short line") railroads in the United States.  Operating nearly 50,000 track miles in the United States, short line railroads play a vital role in the transportation network.  ASLRRA represents its member railroads in proceedings before Congress, administrative agencies, and the courts in matters of common interest, such as the issues involved in this lawsuit.  ASLRRA members, including New York & Atlantic Railway Company and New York Susquehanna & Western Railroad, operate in New York State and transport solid waste that includes construction and demolition debris.

8.      Plaintiff National Waste & Recycling Association – New York State Chapter (NWRA) is the state chapter of the National Waste & Recycling Association, which is a non-profit trade association representing private-sector U.S. waste and recycling companies as well as the manufacturers and service providers that do business with those companies.  The New York State Chapter consists of over 100 member companies that are a mix of national, regional, and local companies, operate in every New York community, provide essential waste management and recycling services to New York residents and businesses, and employ more than 24,000 New York residents.  New York State Chapter members, including WIN Waste Innovations Holdings Inc. ("WIN Waste Innovations") and Winters Brothers Waste Systems of Long Island ("Winters Bros."), operate in New York State and work closely with railroads that operate on the interstate rail system, including members of AAR and ASLRRA.

9.      Defendant Basil Seggos is the Commissioner of the New York Department of Environmental Conservation (DEC).  As Commissioner, he is the head of DEC, *see* N.Y. Env't Conserv. Law § 3-0103, and has primary authority to implement and enforce the Waste By Rail Law.  Commissioner Seggos is sued in his official capacity.

10.      Defendant Letitia James is the Attorney General of New York.  As the Attorney General, she may "initiate any appropriate action or proceeding to enforce" the Waste By Rail Law.  N.Y. Env't Conserv. Law § 71-2727(2).  Attorney General James is sued in her official capacity.

**JURISDICTION AND VENUE**

11.      This Court has jurisdiction under 28 U.S.C. § 1331 because the case arises under (i) the Supremacy Clause of the Constitution of the United States, Article VI, clause 2; and (ii) the laws of the United States, including ICCTA.

12.     This Court may declare the legal rights and obligations of the parties in this action under 28 U.S.C. § 2201 because this action presents an actual controversy within the Court's jurisdiction.

13.     Venue is proper in this district under 28 U.S.C. § 1391(b).

14.     AAR, ASLRRA, and NWRA have associational standing to bring this suit on behalf of their respective members because at least one of the members of each association— including CSX and Norfolk Southern for AAR; New York & Atlantic Railway Company and New York Susquehanna & Western Railroad for ASLRRA; and WIN Waste Innovations and Winters Bros. for NWRA—will be directly, adversely, and imminently affected by the Waste By Rail Law and thus would have standing to sue in their own right.  If Defendants are not enjoined, the members of AAR, ASLRRA, and NWRA face uncertainty and the "immediate or threatened injury" of enforcement actions.  *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342 (1977).  Furthermore, the interests that these associations seek to protect by way of this lawsuit are germane to their purpose.  Finally, neither the claims asserted nor the relief requested requires individual members of these associations to participate in this suit.

## FACTS

**A.      AAR's And ASLRRA's Members Safely And Efficiently Transport Waste As Part Of An Interconnected National Transportation Network.**

15.     The members of AAR and ASLRRA play a critical role in the national and global economy, transporting commodities and other goods to industry, businesses, and consumers. Many are common carriers and, as such, federal law requires that they provide "transportation . . . on reasonable request" to waste shippers (and other shippers).  49 U.S.C. § 11101(a).

16.     The members of AAR and ASLRRA are committed to operating in a safe and environmentally sustainable manner.  Railroads are the safest of all forms of surface transportation,

and it is far more fuel-efficient and protective of the environment to move freight by rail than by truck.

      17.    The members of AAR and ASLRRA own, operate, and maintain highly sophisticated and interconnected rail networks. Those networks connect to hundreds of other railroads as well as ports, intermodal terminals, rail-truck transfer facilities, industrial sites and warehouses, and more. These networks are interstate—or even international—in scope.

      18.    For example, AAR member CSX operates in 23 states (including New York) and Canada. The CSX system map depicts the interstate nature of the railroad's network and operations:



19.     Likewise, AAR member Norfolk Southern operates in 22 states (including New York) and Canada, as depicted in its system map:



20.     The members of AAR and ASLRRA depend upon a uniform national regulatory scheme for their operations.  That scheme protects the railroads from being forced to comply with a patchwork of state-by-state regulations that would make operating their interstate rail networks costly, burdensome, inefficient, impractical, and in many cases impossible.

21.     Certain AAR members operate extensively in New York State.  CSX, for example, has more than 2,700 miles of track and employs roughly 1,250 people in New York State, working in partnership with nearly 20 short line railroads.  Norfolk Southern has nearly 900 miles of track and employs approximately 450 people in New York State, working in partnership with 22 short line railroads.  CSX's and Norfolk Southern's track and operations in New York State are an inseparable part of the larger North American rail and transportation network, connecting to other

railroads, ports, and facilities in order to move commodities, goods, and materials throughout the United States and beyond.

22.     Freight railroads, including the members of AAR and ASLRRA, transport solid waste in New York and on their interstate networks.  CSX, for example, transports waste, including municipal, consumer, and industrial waste, and interchanges solid waste traffic with short lines in upstate New York and on Long Island.  CSX transports solid waste off of Long Island for customers including WIN Waste Innovations.  Most of this waste is ultimately transported out of New York State by other carriers.

23.     Waste and scrap shipping makes up a significant part of freight railroad business in New York State.  Approximately 3.9 million tons and 43,100 carloads of waste and scrap shipments originated by rail in New York State in 2021, representing 41% of total rail traffic originating in the State.  Reflecting the interconnected, national nature of the rail network, 90% of waste and scrap freight rail traffic terminates outside of New York State.

24.     Conversely, a substantial amount of waste traffic originates outside New York and then enters the State.  For example, the vast majority of Norfolk Southern's waste traffic historically has originated outside of New York State and passes into New York State over the border.

25.     Waste shippers, such as WIN Waste Innovations, rely upon freight railroads, including members of AAR and ASLRRA, to safely, efficiently, and affordably transport waste throughout the national rail network.  Waste shippers often provide the rail cars and other equipment that are used by freight railroads to transport solid waste.

26.     Waste collection, processing, and recycling companies, such as Winters Bros. and its subsidiaries, which operate solid waste rail transfer facilities, rely upon waste shippers, such as

WIN Waste Innovations, to transport construction and demolition waste to landfills, which are often hundreds of miles away from the transfer stations and outside of New York State. Shipping the waste by rail gives these companies a safe, efficient, environmentally friendly, and affordable mode of intra- and interstate transportation.

27.     Railroads have a long track record of transporting waste safely and efficiently, in a manner that is compliant with all laws and regulations, environmentally responsible, and responsive to concerns from community members and other stakeholders. Freight railroads invest heavily in their infrastructure and the development of new technologies to maintain and improve the safety of their operations. Transporting waste by rail instead of by truck reduces greenhouse gas emissions and congestion, resulting in a cleaner and more efficient system for handling and disposing of waste.

28.     Rail containers hauling municipal solid waste use either specialized lids or custom tarping, both of which are specially designed and vented to allow gases to escape. Non-putrescible construction and demolition waste is transported in special gondola cars and fastened in by netting that keeps the contents secure, while ensuring safe rail operations. The use of a cover designed specifically to comply with the Waste By Rail Law would be complex and more expensive, in addition to creating a hazard due to the possibility of tearing and breaking loose because of the sharp, jagged nature of this type of waste.

    **B.     New York State Enacts The Waste By Rail Law.**

29.     The Waste By Rail Law, as S. 2022/A. 4928, was introduced, considered, and passed by both chambers of the New York State Legislature during the 2023-2024 regular session. On September 29, 2023, Governor Hochul signed the Waste By Rail Law into law.

30.     The Waste By Rail Law amends subdivision 2 of section 27-0712 of the New York Environmental Conservation Law, relating to the transportation of solid waste, to read as follows (language added by amendment underlined):

> A municipality or any individual, firm or corporation acting on its behalf or any other individual, firm or corporation shall not cause or permit any solid waste to be transported on any vehicle, barge, ship, or scow unless the solid waste on the vehicle, barge, ship, or scow is covered <u>provided, however, that putrescible waste transported by rail shall be covered with sealing hard lids in a manner not inconsistent with Federal Railroad Administration regulations, and non-putrescible waste shipped by rail shall be covered with hard tarping securely fastened over the load, which shall not exceed the height of the side of the rail container, in a manner not inconsistent with Federal Railroad Administration regulations.</u>

31.     The Environmental Conservation Law defines "[s]olid waste" as "all putrescible and non-putrescible materials or substances discarded or rejected as being spent, useless, worthless or in excess to the owners at the time of such discard or rejection . . . including but not limited to garbage, refuse, industrial and commercial waste, sludges from air or water control facilities, rubbish, ashes, contained gaseous material, incinerator residue, demolition and construction debris, discarded automobiles and offal."  N.Y. Env't Conserv. Law § 27-0701(1).

32.     Although section 27-0712 includes a general requirement that solid waste be covered, the specific requirements of the Waste By Rail Law—that putrescible waste be covered with sealing hard lids and non-putrescible waste be covered with hard tarping—apply only to railroads and not to other forms of transportation, such as trucking, placing railroads at a competitive disadvantage.

33.     The Waste By Rail Law took effect on December 28, 2023.

34.     DEC, led by Defendant Seggos, has primary authority to implement and enforce the Environmental Conservation Law, including article 27, which governs solid waste, and title 7

of article 27, which relates to solid waste management and resource recovery facilities, and which contains the Waste By Rail Law.

35.    The Commissioner of DEC is authorized to assess civil penalties and administrative sanctions for violations of title 7 of article 27 of the Environmental Conservation Law, including the Waste By Rail Law.  *See* N.Y. Env't Conserv. Law § 71-2703(1).  For example, "[a]ny person who violates any of the provisions" of title 7, "or who fails to perform any duty imposed by" title 7, shall be liable for a civil penalty of up to $7,500 for each violation and an additional penalty of up to $1,500 for each day during which the violation continues.  *Id.* § 71-2703(1)(a).

36.    The Commissioner of DEC may also "issue, modify and revoke orders prohibiting violations of any of the provisions of" article 27 of the Environmental Conservation Law, including the Waste By Rail Law, and "requiring the taking of such remedial measures as may be necessary or appropriate."  N.Y. Env't Conserv. Law § 71-2727(1).

37.    Similarly, the Attorney General, "on [her] own initiative, or at the request of" the Commissioner of DEC, "may initiate any appropriate action or proceeding to enforce any provision" of article 27 of the Environmental Conservation Law, including the Waste By Rail Law. N.Y. Env't Conserv. Law § 71-2727(2).

38.    DEC has advised Plaintiffs that it does not anticipate commencing enforcement of the Waste By Rail Law pending resolution of this dispute.

**C.    The Waste By Rail Law Will Burden Rail Transportation And Disrupt Interstate Commerce.**

39.    The Waste By Rail Law took effect on December 28, 2023.  Failure to comply with the Law could result in significant penalties, while complying with the Law will burden and disrupt rail operations in New York State and across the interstate rail network, and require railroads and waste shippers to give up their rights under federal law.

40.    The Waste By Rail Law thus presents Plaintiffs and their members with the Hobson's choice of complying with the Law or suffering the threat of significant penalties.  *See, e.g.*, *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) ("irreparable injury" existed where states "made clear that they would seek to enforce" law and plaintiffs faced "Hobson's choice" of "expos[ing] themselves to potentially huge liability" or "suffer[ing] the injury of obeying" law); *Am.'s Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1334 (11th Cir. 2014) ("[a]bsent an injunction, [plaintiffs] will be forced either to incur the costs of compliance with a preempted state law or face the possibility of penalties").

41.    The Waste By Rail Law requires railroads and waste shippers to use specific coverings that they do not currently use and to deviate from industry best practices.  These coverings are unnecessary to protect the public health and safety, and in fact may be more dangerous to the public and interfere with the efficient and safe operation of the interstate rail system.  For example, a rigid tarp on a rail car transporting construction waste may not secure properly, altering the aerodynamics as the railcars travel and increasing the likelihood the tarp is caught in the wind and flies off, potentially becoming caught under the railcar wheels causing a derailment or allowing debris to escape from the railcar.  These risks do not exist with current rigid mesh tarps, which are more malleable and aerodynamically sound.

42.    The requirement to employ specific types of coverings when operating within the borders of New York State is disruptive and burdensome for the interstate, interconnected operations of freight railroads, which regularly cross state borders, and are premised on a uniform, national regulatory scheme rather than a patchwork of state-by-state regulations.

43.    There are no practical means for Plaintiffs and their members to remove a covering from a rail car entering New York State, discard or store this covering, place a new covering on

the rail car, and then repeat the process in reverse when exiting the State.  The Waste By Rail Law thus effectively requires Plaintiffs, and their members, to use the coverings required by the Law on any train containing solid waste that might travel through New York State, disrupting the national rail network and the free flow of interstate commerce.

44.    In addition to the threat of fines for noncompliance, Plaintiffs and their members will incur significant costs from attempting to comply with the Waste By Rail Law's burdensome requirements, and from the delays and disruption that compliance will occasion.  The disruption and uncertainty is compounded by the fact the Waste By Rail Law does not define the precise type of coverings necessary to comply with the Law.

45.    Additional harmful impacts on rail transportation and interstate commerce will result from the backlog of railcars and waste at transload stations.  Many of the waste transload stations share rail spurs with other railcars containing and transporting non-waste commodities. Due to the additional time that would be required to cover railcars in accordance with the Waste By Rail Law, movement of the other railcars will be adversely affected, resulting in delays and congestion on the spur line and along the rail lines.  Many of these rail lines support freight and commuter service, so any delays or congestion will spill over to other rail service areas.  This will make rail transportation of waste logistically more difficult, increase cost margins, and drive more waste to be moved by trucks, directly impacting freight rail carriers.  The cascading impacts of shifting many thousands of tons of waste disposal from rail to trucks (every rail car would need to be replaced with 4-5 trucks) will impose enormous equipment and labor costs, logistical complications, and environmental impacts (including increased greenhouse gas emissions from trucks) that will damage Plaintiffs and their customers across New York and beyond.

46.     The result of the Waste By Rail Law is to injure Plaintiffs, their members, freight railroads, and waste shippers, and obstruct the free flow of interstate commerce, by disrupting rail operations within and beyond New York State.

## CLAIMS FOR RELIEF

### Claim One
### Federal Preemption

47.     Plaintiffs incorporate all preceding paragraphs by reference.

48.     The Waste By Rail Law conflicts with and is preempted by ICCTA, which provides that "[t]he jurisdiction of the [STB] over . . . transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers … is exclusive." 49 U.S.C. § 10501(b).  Because ICCTA's remedies are "exclusive," they "preempt the remedies provided under Federal or State law." *Id.*

49.     Under ICCTA, "transportation" is defined to "include[ ] (A) a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use; and (B) services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange of passengers and property."  49 U.S.C. § 10102(9).

50.     "Congress's intent in [ICCTA] to preempt state and local regulation of railroad transportation has been recognized as broad and sweeping." *Union Pac. R.R. Co. v. Chi. Transit Auth.*, 647 F.3d 675, 678 & n.1 (7th Cir. 2011).  "It is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations." *City of Auburn v. U.S. Gov't*, 154 F.3d 1025, 1030 (9th Cir. 1998).  "Congress recognized that continuing state

regulation . . . would risk the balkanization and subversion of the Federal scheme of minimal regulation for this intrinsically interstate form of transportation." *Iowa, Chi. & E. R.R. Corp. v. Wash. Cnty.*, 384 F.3d 557, 559 (8th Cir. 2004) (quotation marks omitted).

51.     "ICCTA preempts all state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation." *Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 102 (2d Cir. 2009) (quotation marks omitted); *see also Delaware v. STB*, 859 F.3d 16, 18 (D.C. Cir. 2017) (same).  ICCTA preemption extends to state laws concerning "'equipment of any kind related to the movement of passengers or property, or both, by rail.'" *Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 639 (2d Cir. 2005) (quoting 49 U.S.C. § 10102(9)(A)).

52.     "[S]tate or local statutes or regulations are preempted categorically if they have the effect of managing or governing rail transportation." *Delaware*, 859 F.3d at 19 (quotation marks omitted).  State laws "that are not categorically preempted may still be impermissible if, as applied, they would have the effect of unreasonably burdening or interfering with rail transportation." *Id.* And even an otherwise permissible regulation will be preempted if it is "applied in a manner that . . . discriminate[s] against railroad operations." *N.Y. Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 253 (3d Cir. 2007).

53.     The transportation of solid waste by rail falls within the exclusive jurisdiction of the STB.  Congress made this clear in the Clean Railroads Act of 2008, which preserved STB jurisdiction over "the railroad transportation of solid waste after the solid waste is loaded for shipment on or in a rail car."  49 U.S.C. § 10908(e)(1)(H); *see also* 49 CFR §§ 1155.1, 1155.2 (same).  The STB has recognized that state regulation concerning discharges from rail cars in transit would likely be preempted by ICCTA.  *See Ass'n of Am. R.R.—Pet. for Declaratory Order*,

No. FD 36369, 2020 WL 7778233, at *11 (Dec. 29, 2020) (explaining that rail cars are "essential for moving freight from state to state" and "a patchwork of differing regulations that interrupted the free flow of interstate commerce . . . would, by its nature, be incompatible with [ICCTA's] purpose of ensuring uniform regulation of rail transportation").

54.     The Waste By Rail Law conflicts with and is categorically preempted by ICCTA because it directly manages and governs rail transportation.

55.     The Waste By Rail Law conflicts with and is preempted by ICCTA because it has the effect of unreasonably burdening and interfering with rail transportation.

56.     The Waste By Rail Law conflicts with and is preempted by ICCTA because it discriminates against railroad operations as compared to other modes of freight transportation, including trucks.

57.     The Waste By Rail Law is not a safety regulation.  But even if it were a safety regulation, it would also be federally preempted under the Federal Rail Safety Act, 49 U.S.C. § 20106(a)(1) (providing that railroad safety laws "shall be nationally uniform to the extent practicable"), and the Hazardous Materials Transportation Act, 49 U.S.C. § 5125 (providing for national uniformity in the transportation of hazardous materials).

<b>Claim Two<br>Declaratory Relief Under 28 U.S.C. § 2201</b>

58.     Plaintiffs incorporate all preceding paragraphs by reference.

59.     This action presents an actual case or controversy between Plaintiffs and Defendants concerning the validity and enforceability of the Waste By Rail Law.

60.     Because the Waste By Rail Law is preempted by ICCTA, Plaintiffs seek and are entitled to a declaration under 28 U.S.C. § 2201 that the Waste By Rail Law is invalid and unenforceable for the reasons stated above.

**Claim Three**
**Injunctive Relief Under 42 U.S.C. § 1983 And The Court's Equitable Powers**

61.     Plaintiffs incorporate all preceding paragraphs by reference.

62.     Under 42 U.S.C. § 1983 and the Court's equitable powers, Plaintiffs are entitled to injunctive relief against Defendants, whose enforcement of the Waste By Rail Law would conflict with and violate ICCTA.

63.     Absent an injunction, Plaintiffs would suffer irreparable harm for which they would have no adequate remedy at law.

64.     The balance of harms and the public interest weigh heavily in favor of injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A.  Declare that the Waste By Rail Law is preempted by ICCTA;

B.  Preliminarily and permanently enjoin Defendants, as well as their officers, agents, servants, employees, and attorneys, and those persons acting in concert or participation with them, from taking any action to enforce the Waste By Rail Law against Plaintiffs or their members;

C.  Award Plaintiffs their reasonable costs and attorney's fees under 42 U.S.C. § 1988; and

D.  Grant Plaintiffs any other relief this Court deems just and proper.

Dated:  January 8, 2024          Respectfully submitted,

By:   /s/ Thomas H. Dupree Jr.
Thomas H. Dupree Jr. (*pro hac vice* forthcoming)
Michael K. Murphy (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone:  202-955-8500
Facsimile:  202-467-0539
TDupree@gibsondunn.com
MMurphy@gibsondunn.com

*Attorneys for Plaintiffs AAR and ASLRRA*

Megan R. Brillault (MB5562)
Michael G. Murphy (MM5472)
BEVERIDGE & DIAMOND, P.C.
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone:  212-702-5400
Facsimile:  212-702-5454
mbrillault@bdlaw.com
mmurphy@bdlaw.com

James B. Slaughter (*pro hac vice* forthcoming)
1900 N Street, NW, Suite 100
Washington, DC 20036
Telephone:  202-789-6000
Facsimile:  202-789-6190
jslaughter@bdlaw.com

*Attorneys for Plaintiff NWRA*