# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ASSOCIATION OF AMERICAN RAILROADS;
AMERICAN SHORT LINE AND REGIONAL
RAILROAD ASSOCIATION; and NATIONAL
WASTE & RECYCLING ASSOCIATION – NEW
YORK STATE CHAPTER,

      Plaintiffs,

      v.

BASIL SEGGOS,
    *Commissioner of the New York
    Department of Environmental
    Conservation*; and
LETITIA JAMES,
    *Attorney General of New York*,
in their official capacities,

      Defendants.

Case No. 24-cv-00135-RA

## PLAINTIFFS' OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

Megan R. Brillault (MB5562)
Michael G. Murphy (MM5472)
BEVERIDGE & DIAMOND, P.C.
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: 212-702-5400
Facsimile: 212-702-5454
mbrillault@bdlaw.com
mmurphy@bdlaw.com

James B. Slaughter (*pro hac vice*)
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
Telephone: 202-789-6000
Facsimile: 202-789-6190
jslaughter@bdlaw.com

*Attorneys for Plaintiff NWRA*

Thomas H. Dupree Jr. (*pro hac vice*)
Michael K. Murphy (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone: 202-955-8500
Facsimile: 202-467-0539
TDupree@gibsondunn.com
MMurphy@gibsondunn.com

*Attorneys for Plaintiffs AAR and ASLRRA*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND ...............................................................................................................3

LEGAL STANDARD.........................................................................................................6

ARGUMENT ...................................................................................................................6

     I.     ICCTA Applies To The Waste By Rail Law........................................................6

          A.     ICCTA Governs The Transportation Of Solid Waste By Rail. ................6

          B.     The State's "Railroad Safety Law" Argument Is Meritless. ...................11

     II.    The Waste By Rail Law Would Still Be Preempted Even If ICCTA Did Not Apply...................................................................................................18

          A.     FRSA Preemption. .............................................................................19

          B.     HMTA Preemption. ............................................................................21

CONCLUSION................................................................................................................23

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Advoc. Health Care Network v. Stapleton*,
    581 U.S. 468 (2017) .................................................................................................16

*Alix v. McKinsey & Co.*,
    23 F.4th 196 (2d Cir. 2022).........................................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................6

*Ass'n of Am. R.R.s v. S. Coast Air Quality Mgmt. Dist*,
    622 F.3d 1094 (9th Cir. 2010)...............................................................................7, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................6

*BNSF Railway Co. v. Hiett*,
    22 F.4th 1190 (10th Cir. 2022)............................................................................12, 13

*City of Auburn v. U.S. Gov't*,
    154 F.3d 1025 (9th Cir. 1998)....................................................................................7

*City of Seattle v. Burlington N. R.R. Co.*,
    41 P.3d 1169 (Wash. 2002).........................................................................................7

*Consol. Rail Corp. v. City of Bayonne*,
    724 F. Supp. 320 (D.N.J. 1989).................................................................................21

*CSX Transp., Inc. v. Easterwood*,
    507 U.S. 658 (1993) ............................................................................................12, 19

*Delaware v. STB*,
    859 F.3d 16 (D.C. Cir. 2017) ...............................................................................7, 11

*Green Mountain R.R. Corp. v. Vermont*,
    404 F.3d 638 (2d Cir. 2005)......................................................................2, 10, 13, 14

*Herriman v. Conrail, Inc.*,
    883 F. Supp. 303 (N.D. Ind. 1995) ..........................................................................12

*Iowa, Chi. & E. R.R. Corp. v. Wash. Cnty.*,
    384 F.3d 557 (8th Cir. 2004).................................................................................7, 14

*Island Park, LLC v. CSX Transp.*,
    559 F.3d 96 (2d Cir. 2009).........................................................................6, 7, 10, 14

*Leopold v. United States*,
    964 F.3d 1121 (D.C. Cir. 2020) ...............................................................................12

*Macfarlane v. Canadian Pac. Ry. Co.*,
    278 F.3d 54 (2d Cir. 2002)........................................................................12

*N.Y. Susquehanna & W. Ry. Corp. v. Jackson*,
    500 F.3d 238 (3d Cir. 2007)........................................................... 7, 11, 13

*Norfolk S. Ry. Co. v. City of Alexandria*,
    2009 WL 1011653 (E.D. Va. Apr. 15, 2009) ..........................................21

*Norfolk S. Ry. Co. v. City of Alexandria*,
    608 F.3d 150 (4th Cir. 2010) ....................................................................13

*Or. Coast Scenic R.R., LLC v. Or. Dep't of State Lands*,
    841 F.3d 1069 (9th Cir. 2016)....................................................................7

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
    579 U.S. 115 (2016) ..................................................................................19

*Riffin v. STB*,
    733 F.3d 340 (D.C. Cir. 2013) ..................................................................17

*Tyrrell v. Norfolk S. Ry. Co.*,
    248 F.3d 517 (6th Cir. 2001)..............................................................12, 15

*Union Pac. R.R. Co. v. Chi. Transit Auth.*,
    647 F.3d 675 (7th Cir. 2011)......................................................................7

*United States v. Locke*,
    529 U.S. 89 (2000) ....................................................................................19

## Statutes

49 U.S.C. § 5125 ............................................................................................22

49 U.S.C. § 10102(9) ...............................................................................1, 2, 6

49 U.S.C. § 10102(9)(A) ...............................................................................10

49 U.S.C. § 10501(b) ..................................................................................1, 6

49 U.S.C. § 10501(b)(1) ......................................................................... 1, 7, 10

49 U.S.C. § 10501(c)(2)(B) ..............................................................................8

49 U.S.C. § 10908(e)(1)(H)(i) ..........................................................................8

49 U.S.C. § 10908(e)(1)(H)(ii) ..............................................................1, 9, 12

49 U.S.C. § 20106(a)(1) .................................................................................19

49 U.S.C. § 20106(a)(2) ...........................................................................15, 19

Clean Railroads Act, Pub L. No. 110-432, 122 Stat. 4848 (2008) ................8

N.Y. Env't Conserv. Law § 3-0301(1) ...................................................................16

N.Y. Env't Conserv. Law § 27-0101 ......................................................................4

N.Y. Env't Conserv. Law § 27-0712(1) .............................................................4, 16

N.Y. Env't Conserv. Law § 27-0712(2) .............................................................1, 3, 9

N.Y. Env't Conserv. Law § 71-2703 ......................................................................3

N.Y. Env't Conserv. Law § 71-2727 ......................................................................3

N.Y. R.R. Law art. 3 § 51-A ...............................................................................15

N.Y. R.R. Law art. 3 § 51-D ...............................................................................15

N.Y. R.R. Law art. 3 § 53 ..................................................................................15

N.Y. R.R. Law art. 3 § 53-A ...............................................................................15

N.Y. R.R. Law art. 3 § 51-B ...............................................................................15

N.Y. R.R. Law art. 3 § 51-C ...............................................................................15

N.Y. R.R. Law art. 3 § 51-D ...............................................................................15

N.Y. R.R. Law art. 3 § 51-F ...............................................................................15

N.Y. R.R. Law art. 3 § 56 ..................................................................................15

N.Y. R.R. Law art. 3 § 79 ..................................................................................15

N.Y. R.R. Law art. 3 § 102 .................................................................................15

N.Y. R.R. Law art. 3 § 105 .................................................................................15

### Other Authorities

*Ass'n of Am. R.R.s—Pet. for Declaratory Order*, No. FD 36369, 2020 WL
7778233 (STB Dec. 29, 2020) .........................................................2, 8, 13, 14

*CSX Transp., Inc.—Pet. for Declaratory Order*, No. FD 34662, 2005 WL 584026
(STB Mar. 14, 2005) ...............................................................................18

S. Rep. No. 104-176 (1995)..................................................................................11

*Waneck & Waneck—Pet. for Declaratory Order*, No. FD 36167, 2018 WL
5723286 (STB Oct. 31, 2018)......................................................................18

New York Dep't of Transp., *Office of Modal Safety & Security—Rail Safety
Bureau*, www.dot.ny.gov/divisions/operating/osss/rail .......................................16

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................6

**Regulations**

49 C.F.R. § 171.2(e)........................................................................................20

49 C.F.R. § 171.8..........................................................................................21

49 C.F.R. § 173.24(b)(1) ...............................................................................20

49 C.F.R. § 174.55(a).....................................................................................20

49 C.F.R. § 174.61(a).....................................................................................20

# INTRODUCTION

Congress has exercised broad regulatory authority over rail transportation for well over a century.  To achieve national uniformity in rail regulation, in 1995 Congress enacted the ICC Termination Act (ICCTA), which vests the federal Surface Transportation Board (STB) with "exclusive" jurisdiction over "transportation by rail carriers," and expressly preempts state legislation that would manage, govern, burden, interfere with, or discriminate against rail transportation.  49 U.S.C. § 10501(b).

New York State has enacted a statute—the Waste By Rail Law—that directly regulates transportation by rail carriers and will have a harmful economic and operational impact on rail. The Waste By Rail Law requires that railroads and their waste shipper customers cover solid waste with specific types of coverings when the waste is transported by rail within New York State.  *See* N.Y. Env't Conserv. Law § 27-0712(2).  The Waste By Rail Law is therefore preempted by ICCTA.

The State recognizes that the Waste By Rail Law would not survive an ICCTA preemption analysis.  So it contends that ICCTA does not apply to the Waste By Rail Law, on the theory that the Waste By Rail Law is a "safety regulation" that falls outside ICCTA's scope.  MTD at 1.

The State is mistaken.  Congress has spoken directly to this issue and expressly provided that ICCTA applies to the "railroad transportation of solid waste."  49 U.S.C. § 10908(e)(1)(H)(ii). The Waste By Rail Law regulates "transport[ation] by rail" of "solid waste."  N.Y. Env't Conserv. Law § 27-0712(2).  That extinguishes the State's argument for dismissal.  Moreover, ICCTA applies to any state law regulating "transportation by rail carriers," including rail "car[s]" and "equipment of any kind," as well as the "storage" and "handling" of materials shipped by rail.  49 U.S.C. §§ 10102(9), 10501(b)(1).  The broad sweep of ICCTA plainly encompasses a state law

requiring railroads to use specified equipment on their rail cars when handling and transporting solid waste.

Nor does the State's incorrect characterization of the Waste By Rail Law as a "railroad safety" law, MTD at 1, remove it from ICCTA's scope.  For one thing, Congress has already determined that ICCTA applies to state laws regulating the transportation of solid waste.  For another, the Second Circuit has recognized that "'[t]ransportation is expansively defined" in ICCTA to include "'equipment of any kind related to the movement of passengers or property . . . by rail.'"  *Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 642 (2d Cir. 2005) (quoting 49 U.S.C. § 10102(9)).  And the STB has explained that ICCTA would likely preempt a regulatory scheme governing "discharges incidental to the operation of rail cars in transit"—specifically, pieces of cargo that could fall from moving railcars—on the basis that it "would regulate an instrument of interstate commerce by governing how rail cars are equipped and/or operated."  *Ass'n of  Am. R.R.s—Pet. for Declaratory Order*, No. FD 36369, 2020 WL 7778233, at *10–11 (STB Dec. 29, 2020).

In any case, the Waste By Rail Law is not a "railroad safety" law.  It is an environmental law aimed at reducing odor and litter.  It is codified in New York's Environmental Conservation Law, not New York's Railroad Law, where the State's railroad safety laws are codified.  Moreover, the Waste By Rail Law is enforced by New York's Department of Environmental Conservation (DEC), not its Department of Transportation, the agency that enforces the State's railroad safety laws.  The Waste By Rail Law's plain text and legislative history confirm that its purpose is to regulate perceived environmental impacts posed by solid waste rather than address the safety of rail operations.

The State urges the Court to analyze federal preemption under the preemption provision in the Federal Railroad Safety Act (FRSA). This is incorrect and unnecessary: If the statute is preempted by ICCTA—and it is—that is the end of the analysis. In any event, FRSA would not save the Waste By Rail Law. FRSA applies only to laws that—unlike the Waste By Rail Law—regulate railroad safety, and it preempts those laws where, as here, the federal government has already regulated in the area. And even if the Waste By Rail Law could escape preemption under ICCTA and FRSA, it would still be preempted under the Hazardous Materials Transportation Act (HMTA).

For all these reasons, the Court should deny the State's motion to dismiss.

## BACKGROUND

The Waste By Rail Law was signed into law on September 29, 2023. Compl. ¶ 29. The Law amends New York's Environmental Conservation Law to require that "putrescible waste transported by rail" be "covered with sealing hard lids," while "non-putrescible waste shipped by rail" must be "covered with hard tarping securely fastened over the load." N.Y. Env't Conserv. Law § 27-0712(2). No comparable requirement is imposed on other modes of transportation, such as trucks, barges, or ships. Defendants are responsible for enforcing the statute, including through civil penalties, administrative sanctions, and other measures. *See, e.g.*, *id.* §§ 71-2703, -2727. The Waste By Rail Law took effect on December 28, 2023, but the DEC has advised Plaintiffs that it does not intend to enforce the Law during the pendency of this litigation. Compl. ¶¶ 33, 38.

Article 27 of the Environmental Conservation Law applies to the "Collection, Treatment and Disposal of Refuse and Other Solid Waste." The purpose of Article 27 is to

> encourage the development of economical projects for the present and future
> collection, treatment and management of solid and hazardous waste in such a
> manner as will assure full consideration of all aspects of planning for proper and
> effective solid and hazardous waste disposal, coordinated, so far as practicable,

with other related state, regional and local planning activities, and consistent with
the protection of the public health, including such factors as population change,
urban and metropolitan development, land use planning, water pollution and air
pollution control, and the feasibility of regional resource recovery programs.

N.Y. Env't Conserv. Law § 27-0101.  The Waste By Rail Law, which falls under Article 27, is intended to "assure that solid waste management is conducted in a safe, sanitary, efficient and environmentally sound manner throughout the state," and specifies that "[s]ome type of cover is necessary to protect against the spillage of waste and emission of odors during its transfer and transportation."  *Id.* § 27-0712(1).

The legislative history of the Waste By Rail Law reflects that lawmakers' motivation in passing the Law was the protection of the environment and the prevention of pollution. Lawmakers expressed concerns about odors and potential leaks from waste being transported by rail, and the possible impact of such fumes and leaks on human health.  The memorandum in support of the Law prepared by the bill's sponsor stated that requiring covers on waste cars "will alleviate the odor and leaking problems as the trains continue down the lines to their destination." Bein Decl. Ex. B (Dkt. 28-2) at 1.  The memorandum also emphasized the "larger environmental consequences" and "health concern[s]" prompted by waste.  *Id*.  On the Assembly floor, the bill's sponsor explained that the legislation aimed to address "environmental hazards" and to "protect our environment," and spoke of a need to "put a lid on everything destroying our environment." Bein Decl. Ex. C (Dkt. 28-3) at 74, 77.

Plaintiffs are trade associations representing the railroad industry and the waste and recycling companies that rely on the nation's railroads to transport solid waste.  Compl. ¶¶ 6–8, 25.  Member railroads play critical roles in the national and global economy, and own, operate, and maintain highly sophisticated, interconnected, interstate rail networks.  *Id.* ¶¶ 15, 17.  These railroads depend on a uniform national regulatory scheme for their operations.  Mandated

4

compliance with a patchwork of state-by-state regulations would make operating their interstate rail networks costly, burdensome, inefficient, impractical, and in many cases impossible. *Id.* ¶ 20. Waste shippers and collection companies engage freight railroads to transport solid waste in an efficient, affordable, and environmentally responsible manner as part of the railroads' interstate rail networks. *Id.* ¶¶ 22–27.

The Waste By Rail Law imposes serious operational and economic burdens on Plaintiffs and their members. It requires railroads and waste shippers to acquire and install specific coverings they do not currently use, which are unnecessary for the public health and safety and deviate from industry best practices. *See* Compl. ¶ 41 ("These coverings are unnecessary to protect the public health and safety, and in fact may be more dangerous to the public and interfere with the efficient and safe operation of the interstate rail system. For example, a rigid tarp on a rail car transporting construction waste may not secure properly, altering the aerodynamics as the railcars travel and increasing the likelihood the tarp is caught in the wind and flies off, potentially becoming caught under the railcar wheels causing a derailment or allowing debris to escape from the railcar.").

The Waste By Rail Law creates a balkanized, state-by-state regulatory patchwork, in which Plaintiffs and their members would be effectively forced to use the coverings the Law requires on any train containing solid waste that might travel through New York State. Compl. ¶ 43. Compliance with the Law would substantially burden and disrupt the interstate, interconnected operations of freight railroads, as well as significantly increase costs and cause delays for railroads and their customers. *Id.* ¶¶ 39–45. It would also place railroads at a competitive disadvantage with other modes of transportation, such as trucks, barges, and ships, which are not subject to the same requirements. *Id.* ¶¶ 45, 56. In sum, the Law would injure Plaintiffs and their members,

obstruct the free flow of interstate commerce, and disrupt rail operations within and beyond New York State. *Id.* ¶ 46.

## LEGAL STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must construe the complaint "liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Alix v. McKinsey & Co.*, 23 F.4th 196, 202 (2d Cir. 2022).

## ARGUMENT

### I.   ICCTA Applies To The Waste By Rail Law.

The Waste By Rail Law regulates the transportation of solid waste by rail by dictating the manner in which rail cars carrying waste are transported along rail lines in New York. It is therefore subject to, and preempted by, ICCTA.

#### A.   ICCTA Governs The Transportation Of Solid Waste By Rail.

1.   ICCTA vests the STB, a federal regulator, with "exclusive" jurisdiction over "transportation by rail carriers," encompassing the "rates, classifications, rules . . ., practices, routes, services, and facilities of such carriers." 49 U.S.C. § 10501(b). ICCTA defines "rail transportation" to include rail "car[s]" and "equipment of any kind," as well as the "storage" and "handling" of materials shipped by rail. *Id.* § 10102(9). Because ICCTA's remedies are "exclusive," they expressly "preempt the remedies provided under Federal or State law." *Id.* § 10501(b). Under ICCTA, "[t]he STB is vested with broad jurisdiction over 'transportation by rail carriers,'" as a culmination of the "broad regulatory authority over rail transportation" that "Congress has exercised . . . for 122 years." *Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 102

(2d Cir. 2009) (quoting 49 U.S.C. § 10501(b)(1)).

The jurisdiction granted by ICCTA to the STB, to the exclusion of "state and local regulation of railroad transportation," is "broad and sweeping." *Union Pac. R.R. Co. v. Chi. Transit Auth.*, 647 F.3d 675, 678 & n.1 (7th Cir. 2011).  By vesting the STB with "complete jurisdiction, to the exclusion of the states, over the regulations of railroad operations," ICCTA "changed significantly" "the federal regulatory scheme for interstate railroad operations." *City of Seattle v. Burlington N. R.R. Co*., 41 P.3d 1169, 1171 (Wash. 2002) (citations omitted).  Indeed, "[i]t is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations." *City of Auburn v. U.S. Gov't*, 154 F.3d 1025, 1030 (9th Cir. 1998) (citation omitted).  "Congress recognized that continuing state regulation . . . would risk the balkanization and subversion of the Federal scheme of minimal regulation for this intrinsically interstate form of transportation." *Iowa, Chi. & E. R.R. Corp. v. Wash. Cnty.*, 384 F.3d 557, 559 (8th Cir. 2004) (quotation marks omitted).  Accordingly, ICCTA categorically preempts all state laws that have the effect of managing or governing rail transportation, as well as laws that unreasonably burden or interfere with rail transportation or discriminate against railroads.  *Island Park*, 559 F.3d at 102; *Delaware v. STB*, 859 F.3d 16, 18–19 (D.C. Cir. 2017); *N.Y. Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 253 (3d Cir. 2007).

Defendants misstate the law in suggesting that ICCTA is only concerned with "economic regulation."  MTD at 3, 9.  "Both we and our sister circuits have rejected the argument—advanced by the [State] here—that ICCTA preempts only economic regulation." *Ass'n of Am. R.R.s v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094, 1098 (9th Cir. 2010); *see also N.Y. Susquehanna*, 500 F.3d at 252 (ICCTA "does not preempt only explicit economic regulation"); *Or. Coast Scenic R.R., LLC v. Or. Dep't of State Lands*, 841 F.3d 1069, 1076 (9th Cir. 2016) ("49 U.S.C. § 10501(b)

preempts not just economic but also environmental regulation, for if local authorities have the ability to impose 'environmental' permitting regulations on a railroad, such power will in fact amount to 'economic regulation' if the carrier is prevented from constructing, acquiring, operating, abandoning, or discontinuing a line."); *Ass'n of Am. R.R.—Pet. for Declaratory Order*, 2020 WL 7778233, at *11 ("[T]he [STB] and courts have rejected the notion that [ICCTA] applies only to economic regulation.").

2.      Congress has already answered "yes" to the specific question presented by this case:  Does a state law regulating the transportation of solid waste by rail fall within the STB's exclusive jurisdiction under ICCTA?  In 2008, Congress enacted the Clean Railroads Act to clarify the respective roles of the STB and the States in regulating the handling and transportation of solid waste by rail.  *See* Pub L. No. 110-432, 122 Stat. 4848 (2008).

In the Clean Railroads Act, Congress amended ICCTA to remove "solid waste rail transfer facilit[ies]" from the STB's exclusive jurisdiction in order to give state and local governments more control over their construction and operation.  49 U.S.C. § 10501(c)(2)(B).  Congress defined "solid waste rail transfer facility" to "mean[ ] the portion of a facility owned or operated by or on behalf of a rail carrier . . . where solid waste, as a commodity to be transported for a charge, is collected, stored, separated, processed, treated, managed, disposed of, or transferred, when the activity takes place outside of original shipping containers."  *Id.* § 10908(e)(1)(H)(i).

At the same time, Congress *preserved* the STB's exclusive jurisdiction over railroad transportation of solid waste after the solid waste has been loaded for shipment in a rail car. Congress did this by excluding from the definition of "solid waste rail transfer facility" the "portion of a facility to the extent that activities taking place at such portion are comprised solely of the railroad transportation of solid waste after the solid waste is loaded for shipment on or in a rail car,

including railroad transportation for the purpose of interchanging railroad cars containing solid waste shipments." *Id.* § 10908(e)(1)(H)(ii) (emphasis added).

The Clean Railroads Act confirms that the Waste By Rail Law is subject to ICCTA preemption. The Clean Railroads Act provides that the STB retains exclusive jurisdiction over the transportation of solid waste by rail. The Waste By Rail Law regulates "the railroad transportation of solid waste after the solid waste is loaded for shipment on or in a rail car," 49 U.S.C. § 10908(e)(1)(H)(ii), because it requires coverings be placed on rail cars after the solid waste has been loaded for shipment in a rail car—and it then prohibits railroads from "caus[ing] or permit[ting] any solid waste" to be transported over their rail lines without the coverings, N.Y. Env't Conserv. Law § 27-0712(2). The Waste By Rail Law directly regulates the operations and equipment of railroads *after* the trains have left the solid waste rail transfer facility and as they are moving in interstate commerce.

Furthermore, the Waste By Rail Law regulates the rail transportation of solid waste that does not originate in New York and simply passes through the State. For example, the Waste By Rail Law governs rail shipments of solid waste that are loaded for shipment in New Jersey and then cross the border into New York. The vast majority of AAR member Norfolk Southern's waste traffic historically has originated outside New York State. *See* Compl. ¶ 24. In short, the Waste By Rail Law reaches rail transportation that has no connection whatsoever to a New York solid waste transfer facility—a point New York concedes. *See* MTD at 1 (the Waste By Rail Law "requires placement of covers over railroad cars carrying putrescible and non-putrescible solid waste in New York" regardless of where the cars were loaded).

There is no need to investigate whether the Waste By Rail Law qualifies as a "railroad safety law" (it doesn't, *see infra* § I.B) because Congress has already spoken specifically to this

exact issue and provided by statute that the transportation of solid waste by rail falls within the STB's exclusive jurisdiction and is subject to ICCTA.  That is the beginning and the end of the analysis.

3.    This Court need go no further than the Clean Railroads Act to deny the State's motion to dismiss.  But the same conclusion follows under the traditional and well-settled standards for ICCTA preemption.

ICCTA categorically preempts state laws that have the effect of managing or governing rail transportation, rail operations and rail equipment, as well as state laws that unreasonably burden or interfere with rail transportation or discriminate against railroads.  *Island Park*, 559 F.3d at 102.  Tellingly, the State makes no argument that the Waste By Rail Law could survive an ICCTA preemption analysis.

The State does not dispute that the Waste By Rail Law directly affects "transportation by rail carriers," including the "practices" of rail carriers, 49 U.S.C. § 10501(b)(1), by requiring railroads and shippers to use particular coverings when transporting solid waste by rail in New York State or otherwise prohibiting those operations in New York.  A state law directing the type of equipment that must be used in rail transportation is a textbook example of a regulation governing "transportation by rail carriers" and their "practices."  *See Green Mountain R.R. Corp.*, 404 F.3d at 642 (ICCTA preemption extends to state laws concerning "'equipment of any kind related to the movement of passengers or property, or both, by rail'") (quoting 49 U.S.C. § 10102(9)(A)).  By mandating particular equipment railroads must use when operating in New York State, the Law directly "manag[es]" and "govern[s]" rail transportation.  *Island Park*, 559 F.3d at 102.

Furthermore, the State does not dispute that the Waste By Rail Law unreasonably burdens

rail transportation.  Indeed, Defendants make no argument to the contrary.  As Plaintiffs allege, because the regulation imposed by the Law would disrupt operations across the entire interstate rail network and interrupt the free flow of interstate commerce, resulting in "enormous equipment and labor costs, logistical complications, and environmental impacts," Compl. ¶ 45, the Law "unreasonably burden[s]" and "interfer[es] with rail transportation." *Delaware*, 859 F.3d at 19. The Waste By Rail Law will result in economic harm to rail carriers, delays and congestion of rail lines, and disruption to the flow of interstate commerce, all of which directly conflicts with ICCTA's purpose. *See* S. Rep. No. 104-176, at 6 (1995) ("The Committee intends that those States regulating intrastate rail transportation continue to be required to regulate only in a manner consistent with [ICCTA]. . . . The hundreds of railroad carriers that comprise the railroad industry rely on a nationally uniform system of economic regulation. Subjecting rail carriers to regulatory requirements that vary among the States would greatly undermine the industry's ability to provide the 'seamless' service that is essential to its shippers and would [weaken] the industry's efficiency and competitive viability.").

Finally, the State does not dispute that the Waste By Rail Law discriminates against rail transportation.  Because the specific covering requirements imposed by the Waste By Rail Law apply solely to the rail industry, and not to other forms of transportation such as trucks, barges, or ships, the Law is also preempted because it "discriminate[s] against railroad operations." *N.Y. Susquehanna*, 500 F.3d at 253.

**B.**     **The State's "Railroad Safety Law" Argument Is Meritless.**

The State does not argue that the Waste By Rail Law can survive an ICCTA preemption analysis.  Instead, the State mischaracterizes the Waste By Rail Law as a "railroad safety law" that should be analyzed only under FRSA's preemption provision.  The State is wrong for many reasons.

1.     The State ignores the Clean Railroads Act and its provision expressly preserving exclusive federal jurisdiction over the rail transportation of solid waste.  As explained above, Congress gave states and localities greater control over solid waste rail transfer facilities, but made clear that the rail transportation of solid waste remains within the STB's exclusive jurisdiction. *See* 49 U.S.C. § 10908(e)(1)(H)(ii).  There is no need to consider whether the Waste By Rail Law amounts to a "railroad safety law" for purposes of whether ICCTA or FRSA preemption applies when Congress has directly spoken to this issue and said ICCTA applies.  At most, the State's purported "railroad safety law" exception to ICCTA preemption is a common-law exception, and a "common-law inquiry must yield when Congress has spoken directly to the issue at hand." *Leopold v. United States*, 964 F.3d 1121, 1129 (D.C. Cir. 2020) (quotation marks omitted).

2.     Even if a "railroad safety law" analysis were appropriate in this case, the Waste By Rail Law is not a railroad safety law.  In determining a statute's purpose, a court "must necessarily look at [its] terms . . . and what [it] requires in terms of compliance." *Tyrrell v. Norfolk S. Ry. Co.*, 248 F.3d 517, 523 (6th Cir. 2001) (internal quotation omitted).  Railroad safety laws include laws that regulate warning devices, train speed, and lighting at rail crossings. *See, e.g.*, *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993) (warning devices); *Macfarlane v. Canadian Pac. Ry. Co.*, 278 F.3d 54 (2d Cir. 2002) (speed); *Herriman v. Conrail, Inc.*, 883 F. Supp. 303 (N.D. Ind. 1995) (lighting at rail crossings).  On the other hand, laws that pertain to public safety are not railroad safety laws, even when they attempt to regulate rail transportation.  For example, in *BNSF Railway Co. v. Hiett*, 22 F.4th 1190, 1192 (10th Cir. 2022), the court held that ICCTA preempted a state statute prohibiting trains from blocking vehicles at railway intersections with a public highway or street for more than ten minutes.  The court rejected the argument that FRSA applied, explaining that the law did "not concern any hazard to the railroad system or its participants," but rather

addressed "local public safety issues—not rail safety issues." *Id*. at 1196 (internal quotation omitted).

Many other courts have applied the same analysis and reached the same conclusion. In *Norfolk Southern Railway Co. v. City of Alexandria*, 608 F.3d 150 (4th Cir. 2010), the court held that a local ordinance governing "the transportation within the City of 'bulk materials'" was preempted by ICCTA insofar as applied to a railroad facility, even though the court recognized that the ordinance "commendably seek[s] to enhance public safety." *Id*. at 155, 159–60. Similarly, in *South Coast Air Quality Management District*, 622 F.3d 1094, the court applied ICCTA's preemption provision to state regulations limiting air pollution from idling trains, holding that such regulations were preempted because, by "apply[ing] exclusively and directly to railroad activity," they had "the effect of managing or governing rail transportation." *Id*. at 1098 (citation omitted). And in *New York Susquehanna*, 500 F.3d 238, the court held that a railroad's solid waste storage and transloading activities constituted "transportation by a rail carrier" and fell within the scope of ICCTA. *Id*. at 242–43, 252. *See also Green Mountain R.R. Corp.*, 404 F.3d at 643 (holding that ICCTA preempts a state environmental land use statute as applied to the construction of a railroad facility).

The STB recently rejected the same arguments the State advances here, in a case arising on strikingly similar facts. In *Association of American Railroads—Petition for Declaratory Order*, 2020 WL 7778233, the STB concluded that ICCTA likely preempted a regulatory scheme governing "discharges incidental to the operation of rail cars in transit"—specifically, pieces and particles of coal that could fall from moving railcars. *Id.* at *10–11. The scheme at issue was a federal permitting scheme that incorporated "state-specific permitting requirements," thus likely "result[ing] in a patchwork of differing regulations." *Id*. at *9. The STB noted that ICCTA gave

it exclusive jurisdiction over the subject matter and that application of the regulatory scheme to discharges from moving rail cars would "likely be preempted" under ICCTA. *Id.* at \*10. The STB explained that applying the scheme "to incidental discharges from the operation of rail cars in transit . . . would regulate an instrument of interstate commerce by governing how rail cars are equipped and/or operated." *Id.* at \*11. Because "rail cars in transit are inherently instrumentalities of interstate commerce," "subjecting them to differing regulatory requirements as they pass from one state to the next is likely to be incompatible with the free flow of interstate commerce that Congress envisioned when enacting" ICCTA. *Id.* at \*13. The STB emphasized that a purely state-based regulatory scheme would present even graver problems, as "it is difficult to imagine that such varying regulations would not impose . . . impermissible interruptions" to the "free flow of interstate commerce." *Id.* at \*9 n.13. This Court should give the STB's decision great weight. The Second Circuit has emphasized that, as the federal agency authorized by Congress to interpret, implement, and enforce ICCTA, the STB "is uniquely qualified to determine whether state law . . . should be preempted by [ICCTA]." *Green Mountain R.R. Corp.*, 404 F.3d at 642 (quotation marks omitted).

The cases the State relies on provide little help. *See* MTD at 9–10. None of them involves environmental or discharge regulations of the sort at issue in the Waste By Rail Law. They concern issues such as railroad crossings, excessive train speeds, and tort claims arising from rail accidents. For example, *Island Park* involved a state order that a private rail crossing "be closed and discontinued for safety reasons" because the crossing was used "to transport heavy, slow-moving farm equipment and [ ] high-speed passenger trains frequently pass through the crossing." 559 F.3d at 99. The court noted that FRSA "expressly addresses the issue of railroad crossings," so a FRSA preemption analysis was appropriate. *Id.* at 106; *see also Iowa, Chi. & E. R.R. Corp.*, 384

F.3d at 558 (state order to rebuild bridges to protect vehicles traveling over railroad tracks); *Tyrrell*, 248 F.3d at 524 (state regulation imposing minimum distance between railroad tracks).

3.    The State errs in citing legislative history to claim the Waste By Rail Law is a railroad safety law.  It is not.  The Waste By Rail Law is an environmental law aimed at limiting the emission of noxious odors and other environmental harms arising from the transport of solid waste.  Even crediting the State's claim that the Waste By Rail Law was motivated by a desire "to protect public safety and human health," and to address "health concerns associated with noxious odors" MTD at 1, 11 (quotation marks omitted), that is different from "*railroad* safety," which concerns safety risks such as train-vehicle or train-pedestrian collisions, train derailments, and other accidents or incidents involving trains and railway personnel.  49 U.S.C. § 20106(a)(2) (emphasis added) (addressing when a State may enact laws "related to railroad safety or security").

The most obvious indicator that the Waste By Rail Law is an environmental law rather than a railroad safety law is that the Legislature codified it as part of the State's Environmental Conservation Law, where the State codifies its laws relating to environmental protection—*not* its Railroad Law, where the State codifies its laws relating to railroad safety.  *See, e.g.*, N.Y. R.R. Law art. 3 § 51-A (clearances), § 52-D (debris to be cleared), § 53 (sign boards, flagmen and gates at crossings), § 53-A (warning signs), § 53-B (ringing bells and blowing whistles at crossings), § 53-C (obstructing farm and highway crossings), § 53-D (unlawful propulsion of a missile at railroad trains); § 53-F (joint inspection of traffic-control signals), § 56 (locomotives must stop at grade crossings), § 79 (air brakes), § 102 (ventilation of tunnels).

Another indicator is that the Waste By Rail Law is enforced by the Commissioner of the Department of Environmental Conservation, the state official authorized to enforce New York's environmental laws—*not* the Commissioner of Transportation, the state official authorized to

15

enforce New York's railroad safety laws.  *See* N.Y. Env't Conserv. Law § 3-0301(1); N.Y. R.R. Law art. 3 § 105; *see also* www.dot.ny.gov/divisions/operating/osss/rail (explaining duties of New York's Rail Safety Bureau within the New York Department of Transportation).  A statute that is not enforced by the agency authorized to enforce the railroad safety laws is not fairly characterized as a railroad safety law.

The State argues that the Waste By Rail Law is intended "'to assure that solid waste management is conducted in a *safe*, sanitary, efficient, and environmentally sound manner throughout the state.'"  MTD at 5 (quoting N.Y. Env't Conserv. Law § 27-0712(1) (emphasis added by State)).  But the single word "safe" cannot bear the weight the State seeks to place on it. Focusing exclusively on the word "safe" would ignore all the other language in the same sentence—"sanitary, efficient, and environmentally sound"—as well as all the language in the neighboring provisions of Article 27 and Title 7 of the Environmental Conservation Law that underscore the statute's environmental purpose.

The State attaches to its motion several snippets from the legislative debate, but a State cannot assert regulatory authority over rail transportation by citing floor statements of the legislator who sponsored the bill and colloquies among members of the Legislature.  In the hierarchy of legislative history, floor remarks by a single legislator are the least reliable guide to legislative intent.  *See Advoc. Health Care Network v. Stapleton*, 581 U.S. 468, 481 (2017) ("The legislative materials in these cases consist almost wholly of excerpts from committee hearings and scattered floor statements by individual lawmakers—the sort of stuff we have called among the least illuminating forms of legislative history." (quotation marks omitted)).

Even if the Court were to consider these materials, they do not support the State's position. The legislative history shows that the Legislature was primarily motivated by environmental

concerns when passing the Waste By Rail Law—namely, "odors," "leaks," "spills," and similar types of contamination or pollution. Bein Decl. Ex. B at 1. Even the Waste By Rail Law's sponsor stated that the Law was intended to address "environmental hazards" and "protect" New York's "environment." Bein Decl. Ex. C at 74. There is no mention in any of the materials furnished by the State of the Legislature's supposed concern for "personal injuries" from railroad accidents. MTD at 12.

To the extent the legislative history mentions "public health," that is not enough to transform the Waste By Rail Law into a railroad safety statute. Public health is not railroad safety. If ICCTA preemption could be avoided simply by claiming that a law has some indirect effect on the health of people who live in communities through which a railroad passes, the scope of ICCTA preemption would be narrowed to the vanishing point, and with it Congress' intent of a uniform national scheme of railroad regulation. The United States Solicitor General recently made this exact point in explaining to the Supreme Court that, contrary to the argument the State makes here, FRSA "cannot be read to create a loophole in the ICCTA that would permit a patchwork of state and local regulation over rail transportation simply because the regulations also happen to touch on 'safety-related' matters." Br. for the United States as Amicus Curiae, *Ohio v. CSX Transp., Inc.*, No. 22-459, 2023 WL 8112708, at *13 (U.S. Nov. 21, 2023), *cert. denied*, 144 S. Ct. 545 (2024). The D.C. Circuit has made the same point. *See Riffin v. STB*, 733 F.3d 340, 344 (D.C. Cir. 2013) (STB has regulatory authority to compel rail carriage of hazardous materials, even though such carriage can present safety issues). Here, any possible connection between the Waste By Rail Law and railroad safety is too indirect and attenuated to displace ICCTA.

4.     The State's argument rests on the incorrect premise that if FRSA applies, ICCTA must not apply. But it provides no explanation why this would be so, and the STB has said that in

17

some cases "there can be overlap to such an extent that both FRSA and ICCTA preemption may apply." *Waneck & Waneck—Pet. for Declaratory Order*, No. FD 36167, 2018 WL 5723286, at *7 (STB Oct. 31, 2018).   The United States Solicitor General agrees, and has so advised the Supreme Court.  *See* Br. for the United States as Amicus Curiae, *Ohio*, 2023 WL 8112708, at *14 (arguing that, in the context of a state blocked-crossing statute, ICCTA preemption applied "regardless of whether [FRSA] might also preempt" the law).

The STB has held that a state statute governing the "transportation of hazardous materials moving by rail through the District of Columbia" could be preempted by *both* ICCTA and FRSA. *CSX Transp., Inc.—Pet. for Declaratory Order*, No. FD 34662, 2005 WL 584026, at *1 (STB Mar. 14, 2005), *recon. denied*, 2005 WL 1024490 (STB May 3, 2005).   In that case, the Board recognized that while the state statute was "subject to FRSA preemption, it also implicated ICCTA preemption because, by prohibiting the railroad's carriage of certain commodities without local government approval, it directly conflicted with the Board's exclusive jurisdiction over interstate rail transportation." *Waneck & Waneck*, 2018 WL 5723286, at *7.  The STB concluded that, because ICCTA "is intended to prevent a patchwork of local regulation from unreasonably interfering with interstate commerce," ICCTA applied to, and preempted, the state statute. *CSX Transp.*, 2005 WL 584026, at *9.

The same analysis applies here.  Even if FRSA applied to the Waste By Rail Law, ICCTA would *also* apply because the Waste By Rail Law "prohibit[s] the railroad's carriage of certain commodities without" the required coverings, and thus "directly conflict[s] with the Board's exclusive jurisdiction over interstate rail transportation." *Waneck & Waneck*, 2018 WL 5723286, at *7.

## II.   The Waste By Rail Law Would Still Be Preempted Even If ICCTA Did Not Apply.

The State's motion to dismiss should be denied because ICCTA applies to, and preempts,

the Waste By Rail Law. Even if the Court were somehow to conclude that ICCTA does not apply, the State's motion to dismiss should still be denied because the Waste By Rail Law is preempted by FRSA and the HMTA. *See* Compl. ¶ 57.

**A.     FRSA Preemption.**

The State errs in claiming that FRSA contains an implicit "presumption against federal preemption." MTD at 13 (citation omitted). Where, as here, a statute "contains an express preemption clause," *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (citation omitted), there is no presumption against preemption. That is particularly so where, again as here, the federal preemption provision concerns "an area where there has been a history of significant federal presence." *United States v. Locke*, 529 U.S. 89, 90 (2000).

FRSA requires that "[l]aws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106(a)(1). FRSA provides a state may adopt or enforce a railroad safety law if the Secretary of Transportation has not "prescribe[d] a regulation or issue[d] an order covering the subject matter of the State requirement." *Id.* § 20106(a)(2). In the State's view, the Waste By Rail Law is not preempted by FRSA because the Secretary of Transportation has yet to prescribe a regulation or issue an order covering the same subject matter. MTD at 14. A federal regulation or order covers the subject matter of a state law when "the federal regulations substantially subsume the subject matter of the relevant state law." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993).

1.     There can be no serious dispute that both the Federal Railroad Administration (FRA) and the Pipeline and Hazardous Materials Safety Administration (PHMSA), agencies within the U.S. Department of Transportation, have issued regulations and orders substantially subsuming the subject matter of the design of freight rail cars used to carry solid waste and hazardous materials.

19

The FRA has promulgated detailed regulations for the design of freight rail cars. Its regulations address and specify numerous aspects of railcar design and prohibit railroads from placing or continuing into service any freight car that does not comply with these requirements. *See generally* 49 C.F.R. pt. 215 (railroad freight car safety standards).

PHMSA has likewise promulgated detailed regulations for the safe transportation of hazardous materials by rail. *See* 49 C.F.R. pts. 171–80. For example, no person may offer or accept a hazardous material for transportation in commerce unless the hazardous material is "properly classed, described, packaged, marked, labeled, and in condition for shipment" under PHMSA regulations. *Id.* § 171.2(e). Federal regulations impose detailed requirements for packaging, including the requirement that shipments be covered. *See id.* § 173.24(b)(1) ("Each package used for the shipment of hazardous materials . . . shall be designed, constructed, maintained, filled, its contents so limited, and closed so that under conditions normally incident to transportation, . . . there will be no identifiable (without the use of instruments) release of hazardous materials to the environment."). In fact, PHMSA regulations include specific requirements for rail shipments. They provide that "[e]ach package containing a hazardous material being transported by rail in a freight container or transport vehicle must be loaded so that it cannot fall or slide and must be safeguarded in such a manner that other freight cannot fall onto or slide into it under conditions normally incident to transportation," *id.* § 174.55(a), and "[a] transport vehicle, freight container, or package containing a hazardous material must be designed and loaded so that it will not become damaged to an extent that would affect its integrity under conditions normally incident to transportation," *id.* § 174.61(a). Many other regulations are likewise specifically applicable to rail transportation. *See id.* pt. 174. Courts have widely recognized that the "rail transportation of hazardous materials . . . is subject to *extensive* federal

regulations and 'state' participation is strictly limited." *Consol. Rail Corp. v. City of Bayonne*, 724 F. Supp. 320, 326 (D.N.J. 1989) (emphasis added).

In short, there are detailed federal regulations from two different federal agencies that substantially subsume the subject matter of the Waste By Rail Law.

2.      The State's response is feeble, partial, and unpersuasive. *See* MTD at 14.  It argues that "the Department of Transportation does not regulate putrescible waste under its hazardous materials transportation regulations," because "household waste" is exempt from the regulations, and "'[h]ousehold waste' is the same as putrescible waste." *Id*.  But this does not help the State because the Waste By Rail Law also applies to non-putrescible waste.  Furthermore, the federal regulations define "[h]ousehold waste" as "any solid waste . . . derived from households."  49 C.F.R. § 171.8.  But the State's legislative history defines "putrescible waste" far more broadly as "waste that is likely to decay."  Bein Decl. Ex. C at 74.

That the State simply ignores the vast scheme of detailed federal regulations covering the subject matter of rail car design and the packaging of shipments for transportation by rail—choosing instead to quibble about the differences between "household waste" and "putrescible waste"—is a telling indicator that even the State realizes the Waste By Rail Law would not survive a FRSA preemption analysis either.

**B.      HMTA Preemption.**

Plaintiffs pleaded in their complaint that the Waste By Rail Law's applicability to hazardous materials means that it is also preempted by the Hazardous Materials Transportation Act.  *See* Compl. ¶ 57.  "One of the objectives of the HMTA is 'a uniform, national scheme of regulation' to govern the transportation of Hazmat." *Norfolk S. Ry. Co. v. City of Alexandria*, 2009 WL 1011653, at *14 (E.D. Va. Apr. 15, 2009), *aff'd in part and vacated in part on other grounds*, 608 F.3d 150 (4th Cir. 2010).  The HMTA contains an expansive preemption provision that

overrides any state law that (1) makes compliance with federal regulations impossible; (2) is "an obstacle to accomplishing and carrying out" federal regulations; or (3) is not "substantively the same" as federal regulations on a wide swath of issues.  49 U.S.C. § 5125.  At the motion-to-dismiss stage, Plaintiffs are not required to put on evidence proving their ability to show that compliance with the Waste By Rail Law and federal regulations would be impossible, or that the Waste By Rail Law is an obstacle to carrying out federal regulations.

The State's motion to dismiss does not even address the HMTA and it should not be allowed to raise the issue for the first time in a reply brief.  Accordingly, there is no basis for the Court to dismiss the HMTA claim.

## CONCLUSION

For the foregoing reasons, this Court should deny the State's motion to dismiss.

Dated:  April 3, 2024            Respectfully submitted,

/s/ Thomas H. Dupree Jr.
Thomas H. Dupree Jr. (*pro hac vice*)
Michael K. Murphy (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone:  202-955-8500
Facsimile:  202-467-0539
TDupree@gibsondunn.com
MMurphy@gibsondunn.com

*Attorneys for Plaintiffs AAR and ASLRRA*

/s/ Megan R. Brillault
Megan R. Brillault (MB5562)
Michael G. Murphy (MM5472)
BEVERIDGE & DIAMOND, P.C.
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone:  212-702-5400
Facsimile:  212-702-5454
mbrillault@bdlaw.com
mmurphy@bdlaw.com

James B. Slaughter (*pro hac vice*)
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
Telephone:  202-789-6000
Facsimile:  202-789-6190
jslaughter@bdlaw.com

*Attorneys for Plaintiff NWRA*

*\*Electronic signatures used with consent of all parties pursuant to SDNY ECF Rule 8.5(b).*

## CERTIFICATE OF SERVICE

I, Thomas H. Dupree Jr., hereby certify that on April 3, 2024, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Southern District of New York by using the CM/ECF system.  All participants are registered CM/ECF users, and will be served by the CM/ECF system.

<div align="right">

*/s/ Thomas H. Dupree Jr.*

Thomas H. Dupree Jr. (*pro hac vice*)

</div>