IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| ASSOCIATION OF AMERICAN RAILROADS; AMERICAN SHORT LINE AND REGIONAL RAILROAD ASSOCIATION; and NATIONAL WASTE & RECYCLING ASSOCIATION – NEW YORK STATE CHAPTER, | : : : : |
| Plaintiffs, | :   Case No. 24-cv-00135(RA) |
| v. | : |
| BASIL SEGGOS, Commissioner of the New York Department of Environmental Conservation; and LETITIA JAMES, Attorney General of New York, | : : |
| in their official capacities, | : |
| Defendants. | : |

---

**DEFENDANTS' REPLY MEMORANDUM OF LAW
<u>IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS</u>**

                        LETITIA JAMES
                        Attorney General of the State of New York
                        Attorney for Defendants
                        28 Liberty Street, 19th Floor
                        New York, New York 10005
                        (212) 416-8797
                        Philip.bein@ag.ny.gov

                        April 12, 2024

Of Counsel:
    Philip Bein
    Elizabeth Morgan

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii
PRELIMINARY STATEMENT ........................................................................................ 1
ARGUMENT ..................................................................................................................... 1
POINT I
ICCTA PREEMPTION DOES NOT APPLY ............................................................... 1
   A.  Under Island Park, ICCTA Preemption Does Not Apply to Safety Regulations.. ................................................................................................................ 1
   B.  The Clean Railroads Act Did Not Expand the Scope of ICCTA Preemption to Cover the Waste by Rail Law ................................................................................... 3
   C.  If the Rail Safety Act Applies for Preemption Purposes, ICCTA Does Not ....... 5
POINT II
THE WASTE BY RAIL LAW SATISFIES THE FIRST SAVINGS CLAUSE OF THE RAIL SAFETY ACT AND IS NOT PREEMPTED ...................................................... 6
   A.  The Waste by Rail Law is a Railroad Safety Law ............................................... 6
   B.  There Are No Department of Transportation Regulations that Cover the Subject Matter of the Waste by Rail Law .............................................................. 9
CONCLUSION ................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................... 10

*BNSF Railway Co. v. Hiett,*
  22 F.4th 1190 (10th Cir. 2022) ..................................................................................... 7

*Island Park, LLC v. CSX Transportation,*
  559 F.3d 96 (2d Cir. 2009) ................................................................................... 1, 2, 7

**Administrative Cases**

*In re Waneck*
  No. FD 36167, 2018 WL 5723286 (S.T.B. Oct. 31, 2018) ................................... 5, 8

*CSX Transp., Inc.—Pet. for Declaratory Order*, No. FD 34662, 2005 WL 584026
(STB Mar. 14, 2005) ………………………………………………………………....5

**Federal Statutes**

49 U.S.C.
  § 10501(b)(1) ................................................................................................................. 4
  § 20106(a)(2) ...................................................................................................... 3-4, 6, 8
  § 5125 ............................................................................................................................ 10

**State Statutes**

Environmental Conservation Law
  § 27-0712[1] ................................................................................................................... 6
  § 27-0712[2] ................................................................................................................... 3

**Federal Regulations**

49 C.F.R.

  Parts 171-180 ................................................................................................................. 9
  § 171.1 ............................................................................................................................ 9
  § 171.8 .......................................................................................................................... 10
  § 172.101 and Appendix A .......................................................................................... 10
  § 173.12(g) ................................................................................................................... 10
  Part 215 .......................................................................................................................... 9

**Other Authorities**

Amicus Brief of United States, *Ohio v. CSX Transp., Inc.*,
    No. 22-459, 2023 WL 8112708 (U.S. Nov. 21, 2023) ............................................ 8-9

**PRELIMINARY STATEMENT**

Defendants' opening memorandum showed that the complaint fails to state a claim and should be dismissed. ICCTA preemption does not apply to the Waste by Rail Law in light of the fact it is a railroad safety regulation that is not preempted by the Rail Safety Act because there is no Department of Transportation regulation or order covering the subject matter of the Waste by Rail Law.

Nothing in plaintiffs' opposition memorandum undermines that showing.

**ARGUMENT**

**POINT I**

**ICCTA PREEMPTION DOES NOT APPLY**

Plaintiffs' opposition memorandum goes to great lengths attempting to show that ICCTA preemption applies to the Waste by Rail Law. Plaintiffs' Opposition to Defendants' Motion to Dismiss (Opp.) at 1-3, 6-11. But plaintiffs are incorrect for two main reasons. First, controlling Second Circuit law establishes that ICCTA preemption is not applicable to railroad safety regulations, which must be analyzed under the Rail Safety Act. Second, the 2008 Clean Railroads Act, which recognizes state jurisdiction over solid waste rail transfer facilities, does not deprive the State of authority to require, for safety reasons, that covers be placed on rail cars of solid waste when they are loaded in waste transfer stations.

    **A.**    **Under Island Park, ICCTA Preemption Does Not Apply to Safety Regulations**

Defying Second Circuit law, plaintiffs state: "The State urges the Court to analyze federal preemption under the preemption provision in the Federal Railroad

1

Safety Act (FRSA). This is incorrect and unnecessary: If the statute is preempted by ICCTA—and it is—that is the end of the analysis." Opp. at 3. In making this assertion, plaintiffs ignore the elephant in the room: the Second Circuit's controlling authority, *Island Park, LLC v. CSX Transportation*, 559 F.3d 96 (2d Cir. 2009). *Island Park* holds that ICCTA preemption does not apply to state railroad safety regulations because the Rail Safety Act "provides the appropriate basis for analyzing whether a state law, regulation or order affecting rail safety is pre-empted by federal law." *Island Park*, 559 F.3d at 107. Thus, whether or not the ICCTA regulates the rail shipments addressed by the Waste by Rail Law or might preempt that law is simply irrelevant provided that the Waste by Rail Law is a railroad safety regulation. If it is, then satisfaction of the first savings clause in the Rail Safety Act expressly authorizes and does not preempt the Waste by Rail Law.

Notwithstanding the controlling authority of *Island Park*, plaintiffs make various policy arguments in support of ICCTA preemption, asserting that if the Waste by Rail Law is sustained it would create an expensive patchwork of state regulations and discriminate against railroads. Opp. at 5, 13, 17-18. While plaintiffs are entitled to their views on policy, those views cannot override the clear language of the first savings clause authorizing states to enact railroad safety laws. As to cost impacts of the law to plaintiffs, the complaint alleges that railroads already spend money on covers for rail cars. Complaint ¶ 28. Moreover, plaintiffs offer only conclusory assertions. They do not allege or show that other states have laws that conflict with New York's law governing covers on rail cars or that other states plan

to enact such laws. Although ECL § 27-0712[2] has long required covers on solid waste for other modes of transport, such as trucks, plaintiffs have pointed to no evidence that the statute has resulted in a patchwork of state regulations of covers on those modes. And if there were valid policy concerns about the Waste by Rail Law, the federal Department of Transportation could address them by issuing a regulation covering the subject matter of the law, thereby preempting it. *See* 49 U.S.C. § 20106(a)(2).

Plaintiffs' claim of discrimination, Opp. at 11, is similarly without support. Railroads in New York have long escaped regulation of their covers while such regulations have applied to other modes of transporting solid waste. ECL § 27-0712[2]. By regulating covers on rail cars, railroads do not face discrimination, but rather a level playing field with those other modes.

### B. The Clean Railroads Act Did Not Expand the Scope of ICCTA Preemption to Cover the Waste by Rail Law

Plaintiffs also argue that the ICCTA preempts the Waste by Rail Law because the Clean Railroads Act of 2008 gave states authority to regulate solid waste rail transfer facilities operated by railroads, but denied states authority to regulate solid waste during the rail transportation of solid waste after leaving the transfer station. Opp. at 8-9. The argument is incorrect.

The 2008 statute did not reduce state authority to regulate rail transportation of solid waste for safety reasons after leaving a transfer station. Before the 2008 statute, the STB already had "general jurisdiction" over rail transportation subject to states' authority to issue certain rail safety regulations in accordance with the

3

savings clauses of the Rail Safety Act. *See* 49 U.S.C. § 10501(b)(1) (STB has "general jurisdiction" over "transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers"); 49 U.S.C. § 20106(a)(2) (savings clauses for state railroad safety regulation).

After the 2008 statute, the same division of authority held: general jurisdiction over rail transportation for the STB subject to state authority under the savings clauses because the 2008 statute did not repeal the savings clauses. Indeed, it would be odd for a statute intended to expand state authority (to now encompass rail transfer facilities) to also shrink preexisting state authority without any mention of that in the statute. Thus, rather than undermining state authority, the statute gave states additional authority to regulate rail transfer stations without forfeiting their pre-2008 authority under the savings clauses of the Rail Safety Act.

Moreover, as plaintiffs indicate in their complaint, pursuant to the Waste by Rail Law, shippers of solid waste place covers on rail cars when those cars are loaded at solid waste rail transfer facilities; that is, at the facilities where states are given authority to regulate by the Clean Railroads Act. *See* Complaint ¶ 45 (referring to these facilities as "waste transload stations").  The Waste by Rail Law requires no active conduct from rail carriers as the loaded and covered cars travel from rail transfer facilities, and so the only regulated activity takes place in those facilities where the states have regulatory jurisdiction.

4

### C. If the Rail Safety Act Applies for Preemption Purposes, ICCTA Does Not

Plaintiffs make no headway in arguing that the Waste by Rail Law can be preempted by *both* the Rail Safety Act and ICCTA. Opp. at 18. They cite the STB decision in *CSX Transp., Inc.—Pet. for Declaratory Order*, No. FD 34662, 2005 WL 584026, at *1 (STB Mar. 14, 2005), *recon. denied*, 2005 WL 1024490 (STB May 3, 2005) (*CSX*), a "rare case" in which that happened. Most obviously, an administrative decision by the STB does not suffice to override the contrary Second Circuit law set forth above. However, the STB itself explained the anomalous decision in *CSX* 13 years later in *In re Waneck*, No. FD 36167, 2018 WL 5723286, at *5 n.6 (S.T.B. Oct. 31, 2018), making it clear that it has no application to the situation at hand.

In *Waneck*, the STB reaffirmed the principle that "rail safety regulations [under the Rail Safety Act] and related claims are generally not subject to ICCTA preemption." *Id.* at *7. The STB stated that *CSX* was the "rare case" where both Rail Safety Act and ICCTA preemption can apply because it involved a local regulation that sought to "severely limit or even halt the rail shipment of hazardous materials through the District of Columbia." *Id.* However, the Waste by Rail Law does not present such a rare circumstance. It does not prevent the rail transportation in New York of any waste. It merely requires covers over rail cars transporting solid waste in the State.

In conclusion, none of plaintiffs' arguments for the application of ICCTA preemption has any merit.

## POINT II

### THE WASTE BY RAIL LAW SATISFIES THE
### FIRST SAVINGS CLAUSE OF THE RAIL SAFETY ACT
### AND IS NOT PREEMPTED

#### A.   The Waste by Rail Law is a Railroad Safety Law

Plaintiffs argue that the Waste by Rail Law is really an environmental or public health statute and therefore not a rail safety law, placing great emphasis on the fact that the law was codified in New York's Environmental Conservation Law and not in its Railroad Law and is enforced by the State's Department of Environmental Conservation and not its Department of Transportation. Opp. at 2, 15-16. However, plaintiffs' argument is flawed because it fails to acknowledge the law's express purpose "to assure that solid waste management is conducted in a *safe*, sanitary, efficient and environmentally sound manner throughout the state," ECL § 27-0712[1] (emphasis added), and fails to acknowledge the law's safety benefit in preventing personal injuries emanating from uncovered rail cars. And the New York Legislature was rational in including the Waste by Rail Law in ECL § 27-0712[1], the preexisting statute regulating covers on other modes of transportation administered by the Department of Environmental Conservation rather than placing it in the Railroad Law because the Railroad Law did not address covers in other modes of transportation.

In addition, under the first savings clause of the Rail Safety Act, to avoid preemption a state law only need be "related to railroad safety." 49 U.S.C. § 20106(a)(2). Nothing in the first savings clause excludes laws related to

6

environmental protection as long as they are also related to railroad safety. As the Second Circuit made clear in *Island Park*, the key issue is whether the "state law, regulation or order [is] *affecting* rail safety." *Island Park*, 559 F.3d at 107. Because the Waste by Rail Law *affects* rail safety by protecting the railroad workers and the public from injuries originating from uncovered rail cars, it is a rail safety law regardless of whether it is also an environmental or public health law.

Ignoring Second Circuit precedent, plaintiffs rely on a Tenth Circuit case, *BNSF Railway Co. v. Hiett*, 22 F.4th 1190, 1192 (10th Cir. 2022), to claim that "laws that pertain to public safety are not railroad safety laws, even when they attempt to regulate rail transportation." Opp. at 12-13. However, the Waste by Rail Law protects both railroad workers and the public from the danger of debris falling off of an uncovered rail car or from noxious fumes emanating from the car.  When the safety of both railroad workers and the public is affected by a state law, the law remains a rail safety regulation. Thus, the Second Circuit held that the State's elimination of a railroad crossing was a rail safety regulation and not preempted where the law protected both the public and railroad personnel from collisions between trains and heavy slow moving farm equipment. *Island Park*, 559 F.3d 96 (2d Cir. 2009).

Much of plaintiffs' opposition is devoted to citing inapposite cases not involving the Rail Safety Act or state railroad safety regulations. *See* cases discussed in Opp. at 12. Inexplicably, plaintiffs argue in a case having nothing to do with railroads or preemption that "[a]t most, the State's purported 'railroad safety law' exception to ICCTA preemption is a common-law exception, and a 'common-law inquiry must yield

7

when Congress has spoken directly to the issue at hand.'" *Id*. at 13. This quotation is incorrect because it ignores the fact that "Congress has spoken directly" to the status of such regulations by expressly authorizing them in the Rail Safety Act's first savings clause. 49 U.S.C. § 20106(a)(2). Significantly, the ICCTA was enacted after the Rail Safety Act, and did not expressly repeal the first savings clause or repeal it by implication because "there is no indication that Congress intended that result." *In re Wan*eck, No. FD 36167, 2018 WL 5723286, at *5 n.6 (S.T.B. Oct. 31, 2018) (citing *Tyrrell*, 248 F.3d at 522-23). That indication is absent here where, as explained by the STB, ICCTA preemption "applies only to *non-safety* railroad regulation and Congress intended to retain the well settled safety authority of the FRA and the states under [the Rail Safety Act] when it enacted [the ICCTA]." *Id* (emphasis added).

*Association of American Railroads—Petition for Declaratory Order*, 2020 WL 7778233, also cited by plaintiffs, Opp. at 13, did not involve preemption under the Rail Safety Act or state railroad safety regulations. Instead, it addressed a very different matter: whether another federal statute, the Clean Water Act, which required permits for discharges into water of pieces of coal from rail cars, was preempted by the ICCTA. Although administered by states, the Clean Water Act is not within the first savings clause because it is a federal statute and not a state railroad safety law. Accordingly, this case does not further plaintiffs' cause.

Plaintiffs' citation to the United States amicus brief in *Ohio v. CSX Transp., Inc.*, No. 22-459, 2023 WL 8112708 (U.S. Nov. 21, 2023), *cert. denied*, 144 S. Ct. 545 (2024), Opp. at 17-18, is unavailing. In that case, the United States actually applied

8

preemption analysis under the Rail Safety Act to a state law limiting the maximum time a train could stop and block a railroad crossing. This law would benefit motorists by decreasing the wait time for them to cross the tracks, and it was "debatable" whether it was related to rail safety. *Id.* at *13. In addition, the Federal Railroad Administration (FRA) had issued regulations "substantially subsuming the subject matter of blocked grade crossings." *Id.* at *16. Accordingly, the Government argued that there was no preemption under the first savings clause of the Rail Safety Act. In contrast, here the Waste by Rail Law does relate to railroad safety and no FRA regulations covering the law have been issued.

### B. There Are No Department of Transportation Regulations that Cover the Subject Matter of the Waste by Rail Law

Plaintiffs claim that various federal regulations "substantially subsume" the subject matter of the Waste by Rail Law, which therefore lies outside of the first savings clause. Opp. at 19-20. However, that is not the case. While the Federal Railroad Administration's 49 C.F.R. Part 215 addresses numerous matters involving rail cars, it does not address covers on rail cars or the more general subject matter of preventing the spillage of solid waste from the contents of rail cars. 49 C.F.R. Parts 171-180, promulgated by the Pipeline and Hazardous Materials Safety Administration, also do not substantially subsume the subject matter of the Waste by Rail Law. These regulations apply only to persons involved in the transportation or packaging of *hazardous materials*, 49 C.F.R. § 171.1, rather than solid waste.

Solid wastes carried in rail cars in New York are not "hazardous materials" within the meaning of these regulations, as the list of materials defined as such does

9

not include solid waste. *See* 49 C.F.R. § 172.101 and Appendix A. It bears repeating that solid waste carried in rail cars in New York includes putrescible household waste that 49 C.F.R. § 173.12(g) expressly leaves to states, localities, and Indian tribes alone to regulate. *See also* 49 C.F.R. § 171.8.

Finally, in one sentence at the end of the complaint, plaintiffs allege that if the Waste by Rail Law were a safety regulation, "it would also be federally preempted under the... Hazardous Materials Transportation Act, 49 U.S.C. § 5125 (providing for national uniformity in the transportation of hazardous materials)." Complaint ¶ 57. That terse and conclusory reference does not state a cause of action because it fails to plead "'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Among other things, plaintiffs fail to state a claim under this statute because, as discussed above, solid wastes are not defined by the federal Department of Transportation as "hazardous materials."

## **CONCLUSION**

For the reasons described above and in defendants' opening memorandum, the complaint should be dismissed and the Court should grant such other and further relief as it deems just and proper.


Dated:  New York, New York
       April 12, 2024

                                       LETITIA JAMES
                                       Attorney General of New York
                                       *Attorney for Defendants*

                                       By: */s/ Philip Bein*
                                            Philip Bein (PB1742)

                                       Senior Counsel
                                       New York State Attorney General's Office
                                       Environmental Protection Bureau
                                       28 Liberty Street, 19th Floor
Of Counsel                             New York, New York 10005
  Elizabeth Morgan                 (212) 416-8797
                                       Philip.bein@ag.ny.gov