UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ASSOCIATION OF AMERICAN
RAILROADS; AMERICAN SHORT LINE
AND REGIONAL RAILROAD
ASSOCIATION; and NATIONAL WASTE
& RECYCLING ASSOCIATION – NEW
YORK STATE CHAPTER,

Plaintiffs,

v.

BASIL SEGGOS, *Commissioner of the New
York, Department of Environmental
Conservation*; and LETITIA JAMES,
*Attorney General of New York*, in their
official capacities.

Defendants.

No. 24-CV-135 (RA)

<u>OPINION & ORDER</u>

---

RONNIE ABRAMS, United States District Judge:

In 2023, the "Waste By Rail Law" was enacted in New York State, mandating that particular coverings be placed over solid waste when transported by rail within the State. *See* N.Y. Env't Conserv. Law § 27-0712(2) (McKinney 2023). Asserting that federal law preempts New York's enactment of the law, the Association of American Railroads, the American Short Line and Regional Railroad Association, and the New York State Chapter of the National Waste & Recycling Association ("Plaintiffs") brought this action against Basil Seggos, Commissioner of the New York Department of Environmental Conservation, and Letitia James, Attorney General of New York ("Defendants"), in their official capacities, seeking to enjoin enforcement of the law and a declaratory judgment that federal law preempts it. Now before this Court is Defendants' motion to dismiss the Complaint. *See* Mot. to Dismiss, ECF No. 26. For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND[1]

On September 29, 2023, the New York Governor signed the "Waste By Rail Law," which amended a subdivision of the New York Environmental Conservation Law to require that certain coverings be placed over solid waste transported via railroad in New York State. In particular, the law requires that putrescible waste—solid organic matter with a tendency to release odors as it decomposes—be covered with "sealing hard lids" and that non-putrescible waste—solid waste without a tendency to decompose and cause odors—be covered with "hard tarping securely fastened over the load." N.Y. Env't Conserv. Law § 27-0712(2); *see also id.* § 27-0701(1) (defining solid waste).

The Waste By Rail Law provides:

> A municipality or any individual, firm or corporation acting on its behalf or any other individual, firm or corporation shall not cause or permit any solid waste to be transported on any vehicle, barge, ship, or scow unless the solid waste on the vehicle, barge, ship, or scow is covered *provided, however, that putrescible waste transported by rail shall be covered with sealing hard lids in a manner not inconsistent with Federal Railroad Administration regulations, and non-putrescible waste shipped by rail shall be covered with hard tarping securely fastened over the load, which shall not exceed the height of the side of the rail container, in a manner not inconsistent with Federal Railroad Administration regulations.*

N.Y. Env't Conserv. Law § 27-0712(2) (emphasis added to denote amendment). The New York Environmental Conservation Law authorizes the New York State Attorney General to initiate proceedings to enforce the Waste By Rail Law, *id.* § 71-2727(2), as well as the Commissioner of the New York State Department of Environmental Conservation to assess civil penalties and administrative sanctions for violations of this and other provisions of the Environmental Conservation Law, *id.* § 71-2727(1); *id.* § 71-2703(1). *See also* Compl. ¶¶ 35, 37, ECF No. 1 ("Compl.").

---

[1] The Court draws the following facts from the Complaint, accepting all "well-pleaded factual allegations" as true, as it must, for purposes of deciding a motion to dismiss. *Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020).

Plaintiffs are three trade associations associated with the railroad and waste industries. The New York State Chapter of the National Waste & Recycling Association consists of "private-sector U.S. waste and recycling companies as well as the manufacturers and service providers that do business with those companies." *Id.* ¶ 8. Members of the Association of American Railroads and the American Short Line and Regional Railroad Association are railroads that operate in more than twenty states, *see id.* ¶¶ 6–7, 17–19, including freight railroads that transport solid waste in New York State, *id.* ¶ 22.

Shipping of waste and scrap shipments comprises a significant portion of the freight railroad business. In 2021, freight shipping of waste and scrap constituted 41% of all rail traffic originating in New York State. *Id.* ¶ 23. Furthermore, "a substantial amount" of national waste shipments passes through the State. *Id.* ¶¶ 23–24.

Prior to enactment of the Waste By Rail Law, Plaintiffs covered putrescible waste using either "specialized lids or custom tarping, both of which are specially designed and vented to allow gases to escape" and transported non-putrescible waste "in special gondola cars . . . fastened in by netting [to] keep[] the contents secure." *Id.* ¶ 28. Plaintiffs allege that compliance with the Waste By Rail Law would require use of a "complex and more expensive" cover "designed specifically to comply with the Waste by Rail Law," which would pose a "hazard due to the possibility of tearing and breaking loose because of the sharp, jagged nature of this type of waste." *Id.* In their view, the coverings required under the State law "deviate from industry best practices," are "unnecessary to protect the public health and safety," and may be "dangerous to the public." *Id.* ¶ 41 ("For example, a rigid tarp on a rail car transporting construction waste may not secure properly, altering the aerodynamics as the railcars travel and increasing the likelihood the tarp is caught in the wind and flies off, potentially becoming caught under the railcar wheels causing a derailment

or allowing debris to escape from the railcar."). Plaintiffs assert that these coverings are "disruptive and burdensome" to their interstate operations and result in more waste being driven by trucks as opposed to by rail. *Id.* ¶¶ 41–45.

Defendants have moved to dismiss the Complaint, arguing that federal law preempts the Waste By Rail Law. Plaintiffs oppose. The Court heard oral argument on January 8, 2025 and subsequently ordered the parties to file letters stating their positions as to whether determination of the Waste By Rail Law's effect on railroad safety requires resolution of "subsidiary factual disputes." Order, ECF No. 40 (quoting *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 317 (2019)).

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action," which are "supported by mere conclusory statements, do not suffice." *Id.* In deciding a motion to dismiss, the Court construes "the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002), although it need not "accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555.

---

[2] Unless otherwise indicated, quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

When evaluating a preemption argument, the Court is "mindful of the procedural context in which [it] conduct[s] this preemption inquiry." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015). Accordingly, "when considering a preemption argument in the context of a motion to dismiss, the factual allegations relevant to preemption must be viewed in the light most favorable to the plaintiff." *Id.* at 444.

## DISCUSSION

At issue on this motion are the express preemption provisions of three federal statutes: the Interstate Commerce Commission Termination Act (the "ICCTA"), the Federal Railroad Safety Act (the "FRSA"), and the Hazardous Materials Transportation Act (the "HMTA"). As discussed in further detail below, the ICCTA governs transportation by rail generally, the FRSA relates specifically to railroad safety, and the HMTA pertains to the transportation of hazardous waste. Plaintiffs principally assert that the ICCTA preempts the Waste By Rail Law, but argue in the alternative that the FRSA and the HMTA do as well. Defendants move to dismiss, urging that only the FRSA is applicable and that the Waste By Rail Law survives preemption under that Act. For the reasons that follow, the Court concludes that Plaintiffs have plausibly alleged that the FRSA is inapplicable because the Waste By Rail Law does not implicate rail safety, and that the law is preempted by the ICCTA. Plaintiffs have not plausibly alleged preemption by the HMTA.

## I.     General Preemption Principles

The Supremacy Clause of the U.S. Constitution provides that the laws of the United States "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "Thus, state laws that interfere with, or are contrary to, federal law must be invalidated." *Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 101 (2d Cir. 2009) (quoting *Hillsborough Cnty.,*

*Fla. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 712 (1985)). "There are three types of preemption:" express, field, and conflict preemption. *Art & Antique Dealers League of Am., Inc. v. Seggos*, 121 F.4th 423, 428 (2d Cir. 2024). In this action, Plaintiffs contend that federal law expressly preempts the Waste By Rail Law.

In matters of preemption, "the purpose of Congress is the ultimate touchstone." *Island Park*, 559 F.3d at 101 (quoting *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008)). The Court discerns Congressional intent primarily "from the language of the pre-emption statute and the statutory framework surrounding it." *Id.* (quoting *Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 641 (2d Cir. 2005)). "The Supreme Court has cautioned, however, that the presence of an express preemption clause in a federal statute does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains." *Id.* at 101 (quoting *Altria Grp.*, 555 U.S. at 76).

## II.    The Federal Railroad Safety Act

Defendants principally argue that the Waste By Rail Law cannot be preempted by federal law because it falls within the first savings clause of the FRSA. The Court disagrees and finds that Plaintiffs have stated a preemption claim under the ICCTA.

As is suggested by its name, Congress enacted the Federal Railroad Safety Act, or FRSA, in 1970 to "promote safety in every area of railroad operations and to reduce railroad-related accidents and incidents." *Id.* at 106 (quoting 49 U.S.C. § 20101). The Act contains an express preemption provision, which provides that "[l]aws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106(a)(1). This provision also contains two savings clauses, the first of which is pertinent to this action:

> [A] State may adopt or continue in force a law, regulation, or order *related to railroad safety* or security until the Secretary of Transportation (with respect to railroad safety

matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement.

49 U.S.C. § 20106(a)(2) (emphasis added). Because the Waste By Rail Law must, as a threshold matter, be "related to railroad safety" for the FRSA to be applicable, 49 U.S.C. § 20106(a)(2), the Court must first consider whether the Waste By Rail Law implicates railroad safety within the meaning of the Act.

Relying principally on the Waste By Rail Law's statutory text and legislative history, Defendants contend that the purpose and effect of the Waste By Rail Law is to promote rail safety. Mem. of Law in Supp. of Mot. to Dismiss 11, ECF No. 27 ("Mot. to Dismiss"); Reply Mem. of Law in Supp. of Mot. to Dismiss 6–8, ECF No. 36 ("Reply"). Plaintiffs disagree, arguing that any connection to rail safety is too indirect, as evidenced in part by the fact that (1) the "language, structure, and legislative history of the Waste By Rail Law . . . demonstrate that [it] is an environmental law"; (2) the law is codified not in a public safety law or in the State's Railroad Law, "where laws related to railroad safety are codified," but in the Environmental Conservation Law; (3) the law is to be enforced by the Commissioner of the Department of Environmental Conservation; and (4) decisions of various courts and the Surface Transportation Board, an agency created by the ICCTA, find that "similar statutes are not related to railroad safety, and counsel[] caution" in reading the FRSA "so broadly that it would swallow up ICCTA preemption." Pls.' Letter 2, ECF No. 42; *see also* Opp'n to Mot. to Dismiss 13–17, ECF No. 35 ("Opp'n").

The Second Circuit's decision in *Island Park, LLC v. CSX Transportation* is instructive. In *Island Park*, the Court considered whether the FRSA or ICCTA preempted New York State's attempted closure of a railroad crossing over a private road. 559 F.3d at 98. In the underlying administrative proceeding, an Administrative Law Judge ("ALJ") had recommended that the

crossing be closed, reasoning that certain features of the train tracks and the passage of high-speed passenger trains through the crossing "presented very serious safety concerns" to the plaintiff— who "use[d] the crossing to transport heavy, slow-moving farm equipment"—because "these conditions adversely affected the time it takes to cross." *Id.* at 99. On the administrative record, the Circuit found it "abundantly clear" that New York State's attempted closure of the railroad crossing "implicate[d] rail safety concerns." *Id.* at 108. The Court thus applied the FRSA, concluding that it did not preempt the state closure order. *Id.* In so doing, the Second Circuit relied on the ALJ's determination that the effect of compliance with the closure order was to "eliminat[e] the risk of a collision." *Id.* at 104.

This Court examines the extent to which the Waste By Rail Law relates to railroad safety, in accordance with *Island Park*. Defendants assert that the law mitigates two categories of harm that relate to rail safety: health hazards and railroad-related accidents that may result from spillage on the tracks. Mot. to Dismiss 11–12. For the reasons that follow, the Court concludes that only the latter constitute "hazard[s] to the railroad system or its participants" that are related to rail safety under the FRSA. *BNSF Ry. Co. v. Hiett*, 22 F.4th 1190, 1196 (10th Cir. 2022) (quoting *People v. Burlington N. Santa Fe R.R.*, 148 Cal. Rptr. 3d 243, 252 (Cal. Ct. App. 2012)).

With respect to the first category, Defendants claim that the Waste By Rail Law mitigates health hazards that can result from exposure to odorous gas from waste. *Id.* In Defendants' view, a state regulation's potential to improve "safety for members of the public" brings the regulation within the FRSA. *Id.* at 10. The Court disagrees. While a state regulation may implicate the FRSA even if the effect on safety is "indirect," *CSX Transp., Inc. v. City of Plymouth, Mich.*, 86 F.3d 626, 630 (6th Cir. 1996) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 386 (1992)), "local public safety issues" generally are "not rail safety issues," because they do not pose a

"hazard to the railroad system or its participants," *BNSF Ry. Co.*, 22 F.4th at 1196 (concluding that state statute that governed time railcar may block vehicular traffic at a railroad intersection did not relate to railroad safety within the meaning of the FRSA) (quoting *Burlington N. Santa Fe R.R.*, 148 Cal. Rptr. 3d at 252). Put another way, health hazards, while important subjects for legislative action, do not necessarily concern railroad safety.

Although Defendants cite *Island Park* and a decision of the federal Surface Transportation Board ("STB") in support of their position, these cases are inapposite. Unlike here, in both those cases, railroad safety was at issue because of a collision or risk of one. In *Island Park*, the ALJ emphasized that safety concerns arose from members of the public crossing the tracks through which high-speed trains pass. 559 F.3d at 99. Similarly, the *Waneck & Waneck* matter before the STB concerned "state law claims arising from a collision between a . . . train and a tour bus at a railroad crossing." No. FD 36167, 2018 WL 5723286, at *1 (S.T.B. Oct. 31, 2018).

The third case Defendants cite is more on point. In *Iowa, Chicago & Eastern Railroad Corp. v. Washington County, Iowa*, the Eighth Circuit reasoned that a state statute which required railroads to maintain certain bridges may be analyzed under the FRSA because "[t]he reasons for replacing the bridges as stated in the stipulated record clearly include a safety component . . . albeit a highway safety issue." 384 F.3d 557, 560 (8th Cir. 2004). The *Iowa* Court, however, did not reach a holding with respect to the FRSA. Rather, the Eighth Circuit held only that "on this record, [the railroad] has failed to establish that ICCTA's preemption provision preempts the state administrative proceedings commenced . . . in response to the County's petition that [the railroad] be ordered to replace the four bridges at its own expense pursuant to" state law. *Iowa*, 384 F.3d at 561; *see also BNSF Ry. Co.*, 22 F.4th at 1196 ("[I]n dicta, that court rejected any argument that rail

safety for the purposes of FRSA preemption does not include the highway safety risks created at rail crossings, after recognizing a long history of federal-state cooperation on highway safety.").

As alleged here, the potential impacts of the Waste By Rail Law on public health neither implicate the railroad itself nor pose a "hazard to the railroad system or its participants." *BNSF Ry. Co.*, 22 F.4th at 1196 (quoting *Burlington N. Santa Fe R.R.*, 148 Cal. Rptr. 3d at 252). Nor does the Waste By Rail Law's potential impact on public health otherwise demonstrate that it "relates to railroad safety" within the meaning of the FRSA.

To be sure, Defendants do identify one rail safety issue that compliance with the Waste By Rail Law may indeed impact: waste spillage onto railroad tracks. *See* Mot. to Dismiss 12 ("Solid waste can spill from a rail car especially if it lacks a sealed hard lid or is piled too high, potentially causing personal injuries from railroad-related accidents and incidents that the Railway Safety Act is intended to prevent." (quoting 49 U.S.C. § 20101)); *see also* N.Y. Env't Conserv. Law § 27-0712(1) ("Legislative findings and intent. . . . Some type of cover is necessary to protect against the spillage of waste and emission of odors during its transfer and transportation."). Unlike the other health concerns Defendants identify, spillage onto the tracks does pose a possible "hazard to the railroad system or its participants," a potential railroad safety issue. *BNSF Ry. Co.*, 22 F.4th at 1196 (quoting *Burlington N. Santa Fe R.R.*, 148 Cal. Rptr. 3d at 252). The allegations in the Complaint, however, contradict Defendants' factual contention. Plaintiffs allege not only that they already "secure[d]" solid waste using "specialized lids," "tarping," "special gondola cars," and "netting" prior to the enactment of the Waste By Rail Law, Compl. ¶ 28, but also that the coverings now required under the statute "deviate from industry best practices" and do not prevent waste

from falling onto railways, *id.* ¶ 41.[3] Accepting these allegations as true and viewing them "in the light most favorable to" Plaintiffs, *Galper*, 802 F.3d at 444, the Court finds that these factual allegations undermine Defendants' argument that the Waste By Rail Law mitigates the spillage of solid waste.

In support of their position, Defendants direct this Court to the statute's legislative history—but the Court agrees with Plaintiffs that the legislative history merely underscores the environmental purpose of the law. To the extent it is relevant, the legislative history mentions "leakage" and "spills" only in the context of health or environmental hazards that may result, rather than suggesting a spill may cause train accidents or personal injuries on the trains or tracks. *See, e.g.*, Bein Decl. Ex. B at 2, ECF No. 28 (N.Y. State Assembly Mem. in Supp. of Legislation) ("Often, waste is either completely or partially uncovered, emits odors, and leaks or spills on the tracks. This poses not only a health concern for residents, but has larger environmental consequences as well."); Bein Decl. Ex. C at 3, ECF No. 28 (statement of Assembly Bill Sponsor Jenifer Rajkumar before New York Assembly on Apr. 26, 2023) ("Leakage, spills and noxious fumes from this waste harms the surrounding communities, posing severe health hazards and also environmental hazards.").

Defendants also rely upon the statutory text. It is true that the statutory purpose of the Waste By Rail Law is "to assure that solid waste management is conducted in a *safe*, sanitary, efficient and environmentally sound manner throughout the state." N.Y. Env't Conserv. Law § 27-0712(1) (emphasis added). But while the statute references safety, the plain text refers to the safety of solid waste management rather than rail safety. Not all laws impacting safety necessitate analysis under

---

[3] Plaintiffs' allegations appear to leave open the possibility that the Waste By Rail Law may relate to rail safety by "increasing the likelihood" that waste will break loose. Compl. ¶ 41. No party argues this point, so the Court does not address it.

the FRSA. In *New York Susquehanna and Western Railway Corp. v. Jackson*, for example, the Third Circuit analyzed "health, safety, and environmental rules" regarding storage and loading of solid waste under the ICCTA, rather than the FRSA. 500 F.3d at 242–43, 249; *see also Green Mountain R.R. Corp.*, 404 F.3d at 643 (explaining that certain public health and safety laws survive preemption under the ICCTA); *BNSF Ry. Co.*, 22 F.4th at 1195 (where state statute "concern[ed] *public* safety, not rail safety, . . . the district court properly analyzed whether the ICCTA, and not the FRSA, preempt[ed] it"). Moreover, the purpose of Article 27 is not rail safety but conducting "proper and effective solid and hazardous waste disposal" in a manner "consistent with the protection of the public health." N.Y. Env't Conserv. Law § 27-0101(1). In short, as Plaintiffs persuasively argue, "[f]ocusing exclusively on the word 'safe' would ignore all the other language in the same sentence—'sanitary, efficient, and environmentally sound'—as well as all the language in the neighboring provisions of Article 27 and Title 7 of the Environmental Conservation Law that underscore the statute's environmental purpose." Opp'n 16.

Defendants also highlight the Waste By Rail Law's reference to the Federal Railroad Administration as further textual evidence that the law relates to railroad safety. In two instances, the State law directs that waste be covered "in a manner not inconsistent with Federal Railroad Administration regulations." N.Y. Env't Conserv. Law § 27-0712(2). Although the Federal Railroad Administration does have "principal federal regulatory authority for rail safety," *Island Park*, 559 F.3d at 107, the Court is not persuaded that a statute's mere reference to safety or the Federal Railroad Administration, without more, is sufficient to implicate the FRSA. Utilizing such an approach, the FRSA could grow so expansive that it could threaten to swallow the ICCTA.

Instead, the Waste By Rail Law appears more comparable to state regulations that courts have analyzed under the ICCTA than those analyzed under the FRSA. Laws and regulations that

have been analyzed under the FRSA include regulations regarding warning devices, train speed, and lighting at rail crossings. *See, e.g.*, *Island Park*, 559 F.3d at 107 (railroad crossing closure); *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993) (warning devices and speed); *Macfarlane v. Canadian Pac. Ry. Co.*, 278 F.3d 54 (2d Cir. 2002) (speed); *United Transp. Union v. Foster*, 205 F.3d 851, 860 (5th Cir. 2000) (warning devices and signaling requirements). By contrast, courts have analyzed under the ICCTA state regulations governing the storage and transloading of solid waste, *N.Y. Susquehanna*, 500 F.3d at 242–43, 249; a state law restricting the time a train can block vehicular traffic at an intersection, *BNSF Ry. Co.*, 22 F.4th at 1192; an ordinance restricting transportation of bulk materials within city limits, *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150 (4th Cir. 2010); local rules limiting air pollution of idling trains, *Ass'n of Am. R.R. v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094 (9th Cir. 2010); and an environmental land use statute that required railroads to obtain permits prior to land development, *Green Mountain R.R. Corp.*, 404 F.3d at 640–41. Plaintiffs' well-pleaded factual allegations support the inference that, unlike laws governing warning signals or train speed, the Waste By Rail Law does not directly bear on railroad safety features. Rather, on Plaintiffs' allegations, the Waste By Rail Law regulates rail transportation in order to address public health and environmental effects incidental to the shipment of solid waste, akin to laws previously analyzed under the ICCTA.

The Court thus concludes that, accepting Plaintiffs' well-pleaded allegations in the Complaint as true, the FRSA is not applicable and preemption should be assessed under the ICCTA. This ruling leaves open the possibility that the Court's conclusion could change following discovery on the issue of whether the Waste By Rail Law does in fact implicate railway safety. Plaintiffs, however, urge the foreclosure of that possibility, arguing that the Court "can and should hold, as a matter of law, that the Waste By Rail Law is *not* a law related to railroad safety." Pls.'

Letter 1, ECF No. 42.[4] Defendants disagree, contending that factual development is necessary to determine the law's effect on railroad safety. Defs.' Letter, ECF No. 41.

While it is true that Defendants' motion to dismiss poses a legal question—whether federal law preempts the Waste By Rail Law—determination of such issues sometimes requires resolution of "subsidiary factual disputes that are part and parcel of the broader legal question."  *Albrecht*, 587 U.S. at 317 (quoting *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 327 (2015)). The Court finds that whether the Waste By Rail Law definitively relates to railroad safety depends in part on some such "subsidiary factual disputes." *Id.* ("We understand that sometimes contested brute facts will prove relevant to a court's legal determination . . . ."). Indeed, the parties have made opposing factual contentions about the law's impact on rail safety. *Compare* Compl. ¶ 41 (alleging that the coverings required under the Waste By Rail Law are "unnecessary to protect the public health and safety"), *with* Mot. to Dismiss 12 ("Solid waste can spill from a rail car especially if it lacks a sealed hard lid or is piled too high, potentially causing personal injuries from 'railroad-related accidents and incidents' that the Railway Safety Act is intended to prevent."); *see also* Defs.' Letter, ECF No. 41 (asserting that "determination of the Waste By Rail Law's effect on railroad safety . . . does require resolution of subsidiary factual disputes" and attaching newspaper articles concerning the impact of debris on railroads).[5] These disputes are inappropriate for resolution on the instant motion to dismiss. *Cf. In re Fosamax (Alendronate Sodium) Prods. Liab.*

---

[4] At oral argument the parties appeared to agree that no discovery is necessary to determine whether the Waste By Rail Law relates to railroad safety. However, in response to the Court's subsequent order directing the parties to submit a supplemental letter advising whether there are "subsidiary factual disputes" that require resolution, Order, ECF No. 40 (quoting *Albrecht*, 587 U.S. at 317), Defendants changed their position, asserting that there are some such disputes after all, *see* Defs.' Letter, ECF No. 41. Plaintiffs again argued there are none. *See* Pls.' Letter, ECF No. 42.

[5] Because the Complaint neither mentioned nor relied on the documents Defendants submitted, the Court declines to consider them at this stage of the proceedings. *See In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 354 n.14 (S.D.N.Y. 2015) ("The [complaint] neither references nor relies on [news articles and academic articles later submitted by plaintiffs]; therefore they are not incorporated by reference or subject to judicial notice.").

*Lit.*, 118 F.4th 322, 345 n.20 (3d Cir. 2024) (explaining that *Albrecht* "effectively modified" the traditional summary judgment standard).

Indeed, in other cases, the record has often informed the court's determination of whether a law implicated rail safety. *See Island Park*, 559 F.3d at 99, 104 (detailing findings of ALJ that conditions of private rail crossing posed "very serious safety concerns"); *City of Plymouth, Mich.*, 86 F.3d at 629–30 (relying on a 1989 report of the Secretary of Transportation to conclude that compliance with the regulation would affect railroad safety); *Iowa, Chi. & E. R.R. Corp.*, 384 F.3d at 560 (explaining that "[t]he reasons for replacing the bridges as stated in the stipulated record clearly include a safety component"); *cf. Tyrrell*, 248 F.3d at 523–24 (noting that prior "federal and state case law recognize[d]" the safety benefits of provisions governing track clearance requirements for railroad workers, and that the state Supreme Court had previously "classifie[d the State] regulation as one dealing with rail safety").

Plaintiffs concede that in these other matters "resolving preemption questions *did* require resolving factual disputes," but contend that "this is not one of those cases." Pls.' Letter 1, ECF No. 42. In support of their assertion, they direct this Court to *Association of American Railroads v. Hatfield*, which granted the plaintiff's motion for partial judgment on the pleadings, rejected the defendants' argument that "further factual development" was necessary, and reasoned that the court should instead rely "on the effect of the statutes themselves and what they require in terms of compliance." 435 F. Supp. 3d 769, 778 (E.D. Ky. 2020) (citing *City of Plymouth, Mich.*, 86 F.3d at 629). Distinguishing itself from the case at bar, however, *Hatfield* (1) recognized that "as a practical matter, both [defendants] effectively concede[d] the threshold 'relate to' issue" and (2) relied upon Sixth Circuit precedent governing a "similar . . . statute," which the Circuit had previously analyzed under the FRSA on summary judgment. *Id.* at 778–79 (citing *CSX Transp.,*

*Inc. v. City of Plymouth*, 283 F.3d 812, 816 (6th Cir. 2002)). Plaintiffs also rely on *Green Mountain Railroad Corp. v. Vermont*, 404 F.3d at 639, and *Tyrrell v. Norfolk Southern Railway Co.*, 248 F.3d at 523, two cases on summary judgment. The former, however, did not analyze the FRSA and the latter relied on Ohio Supreme Court precedent, which had previously concluded, after factual development, that the regulation at issue was one relating to rail safety. *See Balt. & Ohio R.R. v. Pub. Utils. Comm'n of Ohio*, 102 N.E.2d 246, 247 (Ohio 1951).

For all these reasons, the Court finds that Plaintiffs have plausibly alleged that the Waste By Rail Law does not relate to rail safety, but reserves final decision on that legal issue until after the resolution of the "subsidiary factual disputes." *Albrecht*, 587 U.S. at 317 (quoting *Teva Pharms.*, 574 U.S. at 327). Further, because the Court does not apply the FRSA, it does not address Plaintiffs' alternative claim that the FRSA preempts the Waste By Rail Law.

### III.    The Interstate Commerce Commission Termination Act

The Court next considers whether Plaintiffs have stated a claim under the ICCTA. Plaintiffs argue that the ICCTA applies because it "vests the [Surface Transportation Board], a federal regulator, with exclusive jurisdiction over transportation by rail carriers," Opp'n 6, and the statutory history demonstrates that the Board has exclusive jurisdiction over transportation of solid waste in particular, *id.* at 8. The ICCTA preempts the Waste By Rail Law, Plaintiffs say, not only because the law regulates activity within the Board's jurisdiction, but also because the law burdens and discriminates against railroads. *Id.* at 10. For the reasons that follow, the Court agrees.

In 1887, Congress enacted the Interstate Commerce Act, which established the Interstate Commerce Commission to regulate rail transportation. *Island Park*, 559 F.3d at 102. More than a century later, in 1996, the ICCTA "abolished the [Interstate Commerce Commission] and replaced it with the Surface Transportation Board," or STB. *Id.* "In so doing, Congress recognized that

continuing state regulation—of intrastate rail rates, for example—would risk the balkanization and subversion of the Federal scheme of minimal regulation for this intrinsically interstate form of transportation." *Id.* at 102 (quoting *Iowa, Chi. & E. R.R. Corp.*, 384 F.3d at 559). Accordingly, Congress enacted an express preemption clause: "Except as otherwise provided in this part, the remedies provided under this part *with respect to regulation of rail transportation* are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. § 10501(b) (emphasis added). This provision "preempts all state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation." *Island Park*, 559 F.3d at 102 (quoting *N.Y. Susquehanna*, 500 F.3d at 252).

Under the ICCTA, the "STB is vested with broad jurisdiction over transportation by rail carriers." *Island Park*, 559 F.3d at 102 (quoting 49 U.S.C. § 10501(b)(1)). "Transportation is expansively defined to include: a locomotive, car, vehicle, vessel, warehouse . . . yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail," *Green Mountain*, 404 F.3d at 642 (quoting 49 U.S.C. § 10102(9)(A)), as well as "services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange of passengers and property," 49 U.S.C. § 10102(9)(B).

In *Green Mountain Railroad Corporation v. Vermont*, the Second Circuit applied the ICCTA's preemption provision. It considered, first, whether the challenged state action regulated conduct within the STB's jurisdiction and found that it did. 404 F.3d at 642 ("Certainly, the plain language grants the Transportation Board wide authority over the transloading and storage facilities undertaken by Green Mountain."). Second, the Court examined the burden the state

action imposed. *Id.* at 643. Because the statute "necessarily interfere[d] with Green Mountain's ability to construct [rail] facilities and conduct economic activities," the Court concluded that the ICCTA expressly preempted the land use statute at issue. *Id.* at 643–44. Interpreting *Green Mountain*, the Second Circuit has explained that the "appropriate questions" to ask in a preemption analysis are "what does the state seek to regulate and does the proposed regulation burden rail transportation?" *Island Park*, 559 F.3d at 103. The Circuit emphasized that this "inquiry focuses on the degree to which the challenged regulation burdens rail transportation." *Id.* (quoting *N.Y. Susquehanna*, 500 F.3d at 252); *see also id.* at 104 (explaining that "interference with rail transportation must always be demonstrated").

The Court finds that Plaintiffs have plausibly stated a preemption claim under the ICCTA. First, Plaintiffs assert that the Waste By Rail Law seeks to regulate "transportation by rail carriers, including the practices of rail carriers," which falls within the jurisdiction of the STB. Opp'n 10 (quoting 49 U.S.C. § 10501(b)(1)); *see also* Compl. ¶¶ 48–54.[6] Second, Plaintiffs have plausibly alleged that the Waste By Rail Law "unreasonably burdens rail transportation." Opp'n 10–11; *see also* Compl. ¶¶ 55–56. They allege, for instance, that the State law requires them to use a "complex and more expensive" cover, Compl. ¶ 28, which "deviate[s] from industry best practices," *id.* ¶ 41, and poses a "hazard due to the possibility of" waste breaking loose, *id.* ¶ 28. The law will also purportedly cause a "backlog of railcars and waste at transload stations[,] . . . make rail

---

[6] The statutory history of the ICCTA, Plaintiffs argue, also demonstrates that the ICCTA preempts all state action governing transportation of solid waste by rail. Opp'n 8–9. In 2008, Congress enacted the Clean Railroads Act, which amended the jurisdictional provision of the ICCTA and removed regulation of solid waste rail transfer facilities from the STB's exclusive jurisdiction. *See* 49 U.S.C. § 10501(c)(2) (excluding from the STB's jurisdiction "a solid waste rail transfer facility . . . , except as provided under sections 10908 and 10909 of this title"). At the same time, the 2008 Act excluded from the definition of a solid waste transfer facility "the portion of a facility" dedicated "solely [to] the railroad transportation of solid waste after the solid waste is loaded for shipment on or in a rail car." 49 U.S.C. § 10908(e)(1)(H)(ii). In so doing, Plaintiffs say, Congress demonstrated its intent for the transportation of solid waste on railroads to remain in the STB's exclusive jurisdiction. The Court finds for these and the other reasons discussed that Plaintiffs have stated a claim under the ICCTA.

transportation of waste logistically more difficult, increase cost margins, and drive more waste to be moved by trucks, directly impacting freight rail carriers." *Id.* ¶ 45. The Court thus finds that Plaintiffs have plausibly alleged that the Waste By Rail Law burdens rail transportation and have stated a preemption claim under the ICCTA.[7]

## IV.    The Hazardous Materials Transportation Act

Finally, Defendants argue that Plaintiffs have not stated a claim under the Hazardous Materials Transportation Act. "Congress enacted the HMTA in 1975 to protect the Nation adequately against the risks to life and property which are inherent in the transportation of hazardous materials in commerce." *Buono v. Tyco Fire Prods., LP*, 78 F.4th 490, 496 (2d Cir. 2023) (quoting Pub L. No. 93-633, § 102, 88 Stat. 2156, 2156, (1975) (codified as amended at 49 U.S.C. § 5101)). The Act "authorizes the Secretary of Transportation to designate materials as hazardous and to prescribe appropriate Hazardous Materials Regulations." *Id.*

In order to "promote regulatory uniformity," the Act contains express preemption provisions "that displace nonfederal laws about hazardous-materials transportation." *Id.* In particular, the HMTA preempts state law when (i) compliance with both the local requirement and

---

[7] Defendants did not dispute in their briefing that, if the ICCTA applied, Plaintiffs had stated a preemption claim. For the first time at oral argument, however, Defendants argued that Plaintiffs had not stated a claim under the ICCTA because they had not identified a conflict between the Waste By Rail Law and other state laws. Relying on the Supreme Court's decision in *Bibb v. Navajo Freight Lines, Inc*., 359 U.S. 520 (1959), Defendants argued that a state law does not constitute an undue burden on interstate commerce unless it poses a conflict with another state's laws. In *Bibb*, the Court determined that an Illinois law, which required trucks and trailers to utilize certain mudguards, unduly burdened interstate commerce and thus violated the Commerce Clause. As an initial matter, Defendants' argument is waived. *See In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 137 (S.D.N.Y. 2008) ("[T]his argument was raised for the first time at oral argument and so was waived in terms of this motion."); *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 300 (2d Cir. 2006) (declining to address issue "not argued, nor even mentioned, in the brief"). Even reaching the merits of Defendants' *Bibb* argument, the Court finds it unpersuasive. While it is true that the "pre-emption inquiry [under the ICCTA] focuses on the degree to which the challenged regulation burdens rail transportation," *Island Park*, 559 F.3d at 103 (quoting *N.Y. Susquehanna*, 500 F.3d a 252), Defendants have not identified, nor is this Court aware of, any case that has required a plaintiff to identify conflicting state laws in order to state a claim under the ICCTA. And unlike in *Bibb*, a case which predates the enactment of the ICCTA and the FRSA, Plaintiffs do not bring a Commerce Clause claim here.

the HMTA is "not possible;" (ii) the local requirement "is an obstacle to accomplishing and carrying out" the HMTA; or (iii) the local requirement "is not substantively the same" as a provision of the HMTA, or federal regulation, governing statutorily specified subject matter. 49 U.S.C. § 5125 (a)–(b).

Defendants argue that Plaintiffs have failed to state a preemption claim under the HMTA because the Complaint does not plead sufficient facts and solid wastes do not constitute hazardous materials under the pertinent federal regulations. *See* Reply 10; Mot. to Dismiss 14 (asserting that hazardous materials transportation regulations do not regulate putrescible waste). In response, Plaintiffs urge the Court not to consider Defendants' arguments, which were raised for the first time in their Reply brief.[8] Opp'n 22. Plaintiffs further assert that they need not put on evidence at the motion to dismiss stage to demonstrate HMTA preemption—that is, evidence that compliance with both laws is "not possible" or that the State law is an "obstacle to accomplishing and carrying out" the HMTA. *Id.* Thus, Plaintiffs posit, their pleadings are sufficient to state a claim.

Plaintiffs have failed to plead sufficient facts to state a preemption claim under the HMTA. As the Supreme Court explained in *Iqbal*, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Here, in less than a single sentence, Plaintiffs plead only that, "even if [the Waste By Rail Law] were a safety regulation, it would also be federally preempted under the . . . the Hazardous Materials Transportation Act, 49 U.S.C. § 5125 (providing for national uniformity in the transportation of hazardous materials)." Compl. ¶ 57. They, however, do not

---

[8] Although Defendants' opening brief did not explicitly challenge Plaintiffs' HMTA preemption claim, it did argue that solid wastes do not constitute hazardous materials under federal regulations. *See* Mot. to Dismiss 14. Even assuming that Defendants have waived or forfeited their motion to dismiss Plaintiffs' HMTA preemption argument, it is well settled that "the district court has the power to dismiss a complaint sua sponte for failure to state a claim on which relief can be granted," so long as it first "give[s] the plaintiff an opportunity to be heard." *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam). Plaintiff addressed its HMTA argument in its opposition brief and was further heard at oral argument.

allege the elements of this claim, supporting facts, or even that putrescible and non-putrescible wastes constitute hazardous materials. Accordingly, Plaintiffs' allegations are insufficient to state a claim under the HMTA and their claim is dismissed.

If Plaintiffs seek to pursue this claim, the Court will grant them one opportunity to amend their Complaint. *See Obra Pia Ltd. v. Seagrape Invs. LLC*, No. 19-CV-7840 (RA), 2021 WL 1978545, at *3 (S.D.N.Y. May 18, 2021) ("Ordinarily a plaintiff should be granted leave to amend at least once after having the benefit of a court's reasoning in dismissing the complaint."). Although Plaintiffs have not requested an opportunity to amend, the decision whether to grant or deny amendment is "within the sound discretion of the district court," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), and "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2).

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss in part and grants it in part. Plaintiffs shall have thirty (30) days to amend their Complaint, should they elect to do so, provided they have a good-faith basis for amendment. The Clerk of Court is respectfully directed to close the motion pending at ECF No. 26.

SO ORDERED.

Dated:      March 17, 2025
            New York, New York

                                        Ronnie Abrams
                                        United States District Judge