**Office of the New York State Attorney General**

Writer's direct number 212-416-6692

> **MEMO ENDORSED**
>
> _____
> HON. VALERIE FIGUEREDO
> UNITED STATES MAGISTRATE JUDGE
>
> Dated: October 2, 2025
>
> Plaintiffs are directed to file a response by **October 9, 2025**. The deadline for fact discovery is hereby extended to **November 28, 2025**.

**VIA CM/ECF AND**
**COURTESY COPY TO CHAMBERS**

Hon. Valerie Figueredo, U.S.M.J.
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Rm. 1660
New York, NY 10007

    Re:  *Ass'n of American Railroads et al. v. Lefton et al.*, No. 24-cv-135 (S.D.N.Y.) (Abrams, U.S.D.J) (Figueredo, U.S.M.J.)

Dear Judge Figueredo:

    The NYS Office of the Attorney General represents all defendants (the "State") in this action. Plaintiffs' complaint challenges as preempted a 2023 New York State statute known as the "Waste by Rail" Law, which sets requirements for the covering of waste transported by rail within New York. In accordance with Fed. R. Civ. P. 37(a)(3)(B)(iv), Local Civil Rule 37.2, and Rule II.c.2 of Your Honor's Individual Practices, the State submits this letter motion and requests a discovery conference to compel plaintiff Association of American Railroads ("AAR") to respond to two document requests served on June 27, 2025 (the "Requests") that seek discovery of incidents nationwide involving spillage of waste from open-top rail cars, and to revise the Case Management Plan (ECF 53) to allow the parties sufficient additional time to complete fact and expert discovery.

    The State's Request No. 8 seeks production by AAR of "documents discussing or mentioning municipal solid waste falling out of open-top rail cars in the United States," and Request No. 10 seeks the same, but as to falling construction & demolition debris.[1] AAR objects to the Requests because they seek "documents concerning incidents nationwide rather than solely in New York."[2]

---

[1] Exhibit 1, the State's First Set of Document Requests to Plaintiffs AAR et al., dated June 27, 2025, at pp. 8-9. Incidents that occurred in New York were the subject of the State's requests Nos. 7 & 9, and AAR produced several documents responsive to those requests.
[2] Exhibit 2, AAR's Responses and Objections to Defendants' First Set of Document Requests, dated July 28, 2025, at pp. 10-12.

---

Federal Rule of Civil Procedure 26 permits discovery as to any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). As this Court has previously recognized, "[t]he scope of relevancy under Rule 26 is quite broad." *FCX Solar, LLC v. FTC Solar, Inc.*, No. 21-cv-03556 (RA)(VF), 2022 WL 3584946, at *2 (S.D.N.Y. Aug. 22, 2022) (Figueredo, M.J.) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). The State's burden to establish relevancy "is not heavy." *Id.* (citing *Pearlstein v. BlackBerry Ltd.*, 332 F.R.D. 117, 120 (S.D.N.Y. 2019)).

Here, the Requests (1) seek information that is relevant to the State's defense and (2) are proportional to the needs of this case. The State's main defense is that the Waste by Rail Law is not preempted under a savings provision of the Federal Railroad Safety Act ("FRSA"): "[a] State may adopt or continue in force a law . . . related to railroad safety . . . until the Secretary of Transportation . . . prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. § 20106(a)(2).[3] In Judge Abrams' March 17, 2025 Opinion & Order on the State's motion to dismiss ("Abrams Order"), the Court made clear that "discovery on the issue of whether the Waste By Rail Law does in fact implicate railway safety" could convince the Court to evaluate preemption under the FRSA. Abrams Order, at 13. Judge Abrams observed that "in other cases, the record has often informed the court's determination of whether a law implicated rail safety," *id.* at 15, and that "spillage onto the tracks does pose a possible 'hazard to the railroad system or its participants,' a potential railroad safety issue." *Id.* at 10 (citation omitted).

Discovery of incidents involving spilled or protruding cargo, including waste cargo, from open-top rail cars is thus central to the State's defense that the Law is "related to railroad safety" within the meaning of the FRSA because compliance with the Law, which requires covers over waste cargo, would mitigate the risk of such rail incidents. *Cf. CSX Transp., Inc. v. City of Plymouth, Mich.*, 86 F.3d 626, 629-30 (6th Cir. 1996) ("accident rates unquestionably relate to railroad safety" under the FRSA). Because of plaintiffs' objection to the nationwide scope of the two Requests, the factual record on this issue is incomplete. In response to document requests as to incidents *within New York*, AAR produced records of three CSX incidents: (1) a 2014 incident near Utica where a locomotive's windshield was shattered by debris protruding from a passing train; (2) a 2018 incident near Schenectady where a train was similarly "struck by lading [i.e. cargo] and damaged by a passing train"; and (3) a 2024 accident near the NY-Canada border where an unsecured sheet metal load fell onto the ground, causing the breakage of rail, derailment of multiple rail cars, an estimated $100,000 in rail car damage, and an estimated $64,000 of damage to the track. Notably, CSX reported only the 2024 accident to the Federal Railroad Administration (FRA), classifying the first two

---

[3] The later FRSA language that refers to State laws, among other things, being "necessary to eliminate or reduce an essentially local safety or security hazard," *see* 49 U.S.C. § 20106(a)(2)(A), does not apply here because the U.S. Secretary of Transportation has not issued any regulation or order "covering the subject matter" of the Waste by Rail Law.

incidents as "not reportable." AAR also produced limited information from CPKC about a 2002 incident in northern New York where a load of lumber fell off a train.

The State has produced publicly-available FRA summaries of over 30 rail incidents nationwide between 2010 and 2024, where either the primary or secondary "cause code" was "M202 – Load fell from car." [4] But the FRA summaries are incomplete and limited in two key respects. First, as reflected in the New York incidents discussed above, not all M202 incidents (involving cargo falling out of, or protruding from rail cars) are reported to the FRA, as the estimated damage must exceed a monetary threshold to trigger that reporting duty.[5] Second, even as to M202 incidents reported to FRA, the FRA database provides only high-level summaries, whereas the AAR-member railroads possess more detailed information describing the nature of the incidents, and the extent of damage to train equipment, tracks, or personal injuries.[6] As plaintiffs emphasize in their Complaint (¶¶ 22-26), waste cargo is transported by rail nationwide, not just in New York. Plaintiffs can point to nothing unique to New York's physical conditions or railroads' waste hauling operations in New York that would render evidence of out-of-state incidents irrelevant to whether the Law is, in its effect, "related to railroad safety."

The State thus asks the Court to (1) order AAR to respond to the Requests, which seek relevant information that is proportional to the needs of this case, and (2) appropriately extend the current October 6 deadline for the completion of fact discovery (ECF 53 ¶ 7) and other deadlines, including for expert discovery.

Respectfully submitted,

Max Shterngel
Assistant Attorney General
*Counsel for Defendants*

Enclosures
Cc: All Counsels of Record

---

[4] *See* Exhibit 3 (FRA incident summaries produced by the State). The State also produced news reports relating to relevant incidents not appearing in the FRA summaries, as well as a 1953 Interstate Commerce Commission report on an Ohio railway disaster that resulted in 21 deaths and 49 injured people, which occurred because improperly secured scrap metal fell from an open-topped car and caused the derailment of a passenger train.

[5] The current FRA "reporting threshold" is $12,400 of damaged equipment or track. *See* https://railroads.dot.gov/safety-data/forms-guides-publications/guides/monetary-threshold-notice. Between 2000 and 2024, the threshold increased from $6,600 to $12,000. *See id.*

[6] The State's counsel certifies that the parties met and conferred as follows: 8/19/25 from 4:30 to 5:00 p.m. (video conference among all counsels of record, with the exception of Thomas Dupree); 8/29/25 from 11:15 to 11:55 a.m. (call between Max Shterngel for the State and Michael K. Murphy for AAR); and 9/23/25 from 10:15 to 10:35 a.m. (video conference among Max Shterngel and Elizabeth Morgan for the State, and Michael K. Murphy and Alex Boudreux for AAR). In these discussions, AAR's counsel maintained their objection to the nationwide scope of the two Requests. During the September 23 discussion, the parties agreed they were at an impasse, and that the State would apply to the Court.