UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ASSOCIATION OF AMERICAN RAILROADS et al.,

                          Plaintiffs,                       24-CV-135 (RA) (VF)

                -against-

                                             **ORDER**

AMANDA LEFTON et al.,

                          Defendants.
------------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge:**

       On October 1, 2025, Defendants filed a letter motion, seeking to compel Plaintiff Association of American Railroads ("AAR") to respond to two document requests served on June 27, 2025. ECF No. 62. The requests at issue (Request Nos. 8, 10) seek discovery concerning nationwide incidents involving spillage of waste from open-top rail cars. See ECF No. 62-1. AAR objected to the requests as unduly burdensome and overly broad, in part, because the requests seek documents about incidents outside of New York. See ECF No. 62-2 at 10-12 (Response to Requests for Production No. 8 and No. 10); see also ECF No. 65. The Court held a conference on October 28, 2025, to address the dispute. ECF No. 67 ("Tr.").

       AAR has produced discovery concerning incidents in New York involving open-top railcars. Tr. at 5, 12-13. But Defendants seek discovery concerning incidents outside of New York. Defendants argue that such discovery is relevant to showing the practical impact of the law and whether the effect is to mitigate incidents of objects or waste falling from rail cars. Tr. at 5-8. Because the Waste by Rail Law has not been enforced in New York, Defendants intend to rely on expert testimony to show the expected effect of the law in light of incidents in other states. Id. at 7-8. Defendants argue that the discovery requests seek information that is relevant to the State's defense that the Waste by Rail Law is not preempted under a savings provision of the

Federal Railroad Safety Act ("FRSA"), because presumably discovery will show that the state law has a connection to railroad safety. ECF No. 62 at 2. AAR contends that the requests do not seek information relevant to the State's defense because the preemption analysis looks at what information was before the legislature when it enacted the law. Tr. at 9-10.

Consistent with Defendants' argument, case law suggests that the preemption inquiry considers the practical effects of the challenged law. See, e.g., Building Industry Elec. Contractors Ass'n v. City of New York, 678 F.3d 184, 191 (2d Cir. 2012) (stating that "[f]ederal preemption doctrine evaluates what legislation does, not why legislators voted for it or what political coalition led to its enactment"); CSX Transp., Inc. v. City of Plymouth, 86 F.3d 626, 629-30 (6th Cir. 1996) (looking at report discussing accident rates in assessing whether ordinance was preempted by FRSA); Island Park, LLC v. CSX Transp., 559 F.3d 96, 104 (2d Cir. 2009) (discussing ALJ's findings about the safety concerns posed by private rail crossings). Additionally, Judge Abrams noted that the determination of whether a federal law preempts state law may sometimes require resolution of subsidiary factual disputes (ECF No. 40), and she left open the possibility that discovery may show that the Waste by Rail Law implicates railway safety (ECF No. 43 at 13-15). The discovery Defendants seek is thus relevant to the preemption inquiry and, specifically, how the Waste by Rail Law, if enforced, will impact railroad safety.

AAR argues that Defendants can rely on incident information in the public federal database operated by the Federal Railroad Administration ("FRA"). ECF No. 65 at 3. But as Defendants point out, there is a monetary threshold that must be met before an incident must be reported to the FRA and the database therefore does not include a complete record of all potential incidents. Tr. at 12-13. Additionally, Defendants seek this information for only seven Class I railroads, and are not seeking this information from the regional or short-line railroads.

Tr. at 25. Finally, AAR argues that the requests are unduly burdensome, in part, because each railroad maintains records differently and although a railroad may have a system to track FRA-reportable incidents, it may not have a system to track non-FRA reportable incidents. See, e.g., Tr. at 23. AAR admits, however, that it does not know "how difficult it would be" to obtain discovery responsive to these requests. Id. At this stage, there is no concrete evidence of an undue burden before the Court, as AAR has not ascertained whether the Class I railroads keep the requested records and how costly or challenging (if at all) it would be to obtain such records.

Accordingly, for the reasons stated herein, AAR is hereby directed to respond to Requests for Production Nos. 8 and 10.

**SO ORDERED.**

DATED:   New York, New York
         November 1, 2025

_____
VALERIE FIGUEREDO
United States Magistrate Judge